## STATE OF CONNECTICUT *v.* RAYMON VASQUEZ
## (3327)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued November 6, 1986—decision released February 17, 1987

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing his conviction after a trial to the jury, of two counts of robbery

in the first degree, in violation of General Statutes § 53a-134 (a) (2), two counts of kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a, two counts of assault in the second degree in violation of General Statutes § 53a-60a, and one count of sexual assault in the third degree in violation of General Statutes § 53a-72a. The defendant's sole claim on appeal is that the state failed to prove by a preponderance of the evidence that the defendant was advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

From the evidence produced at trial the jury reasonably could have found the following facts. On the evening of September 28, 1982, at about 9:30 p.m., the victims, Robert and Kim, were proceeding in Robert's vehicle on Congress Street in New Haven. As they waited for traffic at the corner of Congress and Baldwin Streets, the defendant approached the driver's side of the vehicle and put a gun to Robert's head. The defendant and another man entered the driver's side of the vehicle and the defendant informed Robert that he would be shot if he didn't have any money.

The defendant and his accomplice directed Robert to drive to a dark area of Cedar Street in New Haven. During the drive, the defendant repeatedly struck the victims on the head with the gun whenever they attempted to turn around and look at their assailants. As a result of being hit with the gun both victims suffered bruises on their heads. Kim's left ear was so severely lacerated that it required sutures.

After Robert parked the car on Cedar Street, the defendant and his accomplice exited the vehicle and, with the interior light on, began taking jewelry from the victims. At one point, the defendant, believing that a gold heart being worn by Kim had fallen from her

neck into her blouse, reached into her blouse to search for it. The defendant further threatened Robert saying that he was dead if he did not have $100. The victims were robbed of cash, a check and several pieces of jewelry.

After taking the victims' property, the defendant made both victims take off their pants and underwear, whereupon the defendant reached between Kim's legs and penetrated her vagina with his finger. The defendant and his accomplice then left the scene.

During the robbery, Robert recognized the defendant, and was, according to his later testimony, "one hundred percent positive" that he was an employee of a certain tire store. The morning following the robbery, Robert went to the tire store to confirm his identification of the defendant. Upon his arrival at the defendant's place of employment, Robert confronted the defendant and they began to fight. The police were called and arrested the defendant for the incident at the store. The defendant was subsequently arrested for the robberies and assaults and found guilty as indicated above.

The defendant's claim of error focuses on the circumstances surrounding his interrogation after the incident at his place of employment. After the defendant was arrested for that incident and while still in custody, he was interviewed by Detective Mel Cartoceti, who was investigating the robbery and assault incidents of the previous evening. During the discussion the defendant denied any involvement in the robbery and assaults of the victims, but did acknowledge that he was at the corner of Congress and Baldwin Streets at 10 p.m. the previous evening.

Prior to trial, the defendant filed a motion to suppress any statements made during the interrogation by Cartoceti, claiming that the statements were made

without a voluntary, knowing, and intelligent waiver of the defendant's privilege against self-incrimination as set out in *Miranda* v. *Arizona,* supra. A hearing on this motion was held outside the presence of the jury just prior to Cartoceti's testimony. At this hearing, the detective testified that the defendant was in custody during their discussion and also testified that he advised the defendant of his *Miranda* rights before questioning him. He stated that he read the defendant his *Miranda* rights from a card in his possession and that the card contained the rights required by *Miranda.* He also testified that the defendant said that he understood his rights and that he would speak with the detective.

On cross-examination, the defendant's counsel established that the defendant had not been free to leave the police station at the time of the interrogation, that Cartoceti had not provided the defendant with a written statement of his *Miranda* rights, and that the police report did not include a statement that the defendant had been advised of his rights. The defendant's counsel questioned the detective regarding the manner of informing the defendant of his rights[1] and whether the defendant had understood those rights. The defendant's counsel further questioned whether Cartoceti had asked the defendant whether he could speak English, what grade in school he had completed, and when he had last slept. The detective was also asked if there had been any indication that the defendant did not understand his rights. At the conclusion of cross-examination, the

---

[1] "Q. Describe again the manner of advisal of these rights. Did you just read them?

"A. Yes.

"Q. Did you show anything written to my client?

"A. I don't believe so, no.

"Q. Did you read them as a group, all at once?

"A. Yes.

"A. So you did not stop after each individual right to ask anything?

"A. That's correct."

court asked the defendant's counsel what he believed he had established from the cross-examination. Counsel responded: "I certainly claim that I proved he was in custody, your Honor, and he was interrogated. I think it is totally irrelevant the reason why he was incarcerated, for what particular offense. I think the Fifth Amendment and *Miranda* warnings and the decisions emanating from that, from the *Miranda* decision rest on the fact that a person, if he is in custody and freedom of movement is contained, must be advised of certain rights. The first two hurdles, he was in custody and interrogated. I further claim that under the circumstances there was no written waiver form provided to my client for him to see and sign, that he was not asked individually after each right was read, that there was insufficient showing, number one, that he understood his *Miranda* warnings and, number two, he made a knowing intelligent waiver of such rights. Therefore, I ask your Honor to suppress the State's offer in this particular instance."

On appeal, the defendant has limited his claim to the issue of whether there was sufficient evidence on the record to support the trial court's conclusion that the defendant was advised of his *Miranda* rights. The state argues that we should not review this claim because it was not raised at trial. We agree.

It is apparent from the defendant's cross-examination of Cartoceti that the defendant attempted to establish that he had not adequately understood and waived his *Miranda* rights. He did not, however, ever question whether the rights described by the detective as "*Miranda* rights" were those rights specifically enumerated by the Supreme Court in *Miranda* v. *Arizona,* supra. On the contrary, from his questioning of the manner in which the rights were given[2] and his lack

---

[2] See footnote 1, supra.

of questioning as to the rights themselves, the defendant appeared to have assumed or agreed that the proper rights were given. Furthermore, the defendant never raised the present claim to the trial court when the court explicitly asked the defendant what he had claimed to establish at the close of the testimony at the suppression hearing. If this claim had been properly raised below, the state would have been afforded an opportunity to argue against it, and the trial court would have had the opportunity to rule on the issue. *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985). "The trial judge presiding over a criminal case is not engaged in taking a Kafkaesque academic test which he may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." *State* v. *Cosby,* 6 Conn. App. 164, 174, 504 A.2d 1071 (1986).

The defendant asserts that the claim is reviewable because the state has the burden of proving both advisement of *Miranda* rights as well as a knowing, intelligent and voluntary waiver of those rights. The defendant contends that the state cannot prove waiver unless it first proves that it informed the defendant of what it was he was waiving. It is true that, before the state may introduce into evidence statements made by the defendant during a custodial interrogation, the state has the burden of proving by a preponderance of evidence that the defendant was properly informed of his *Miranda* rights; *State* v. *Gray,* 200 Conn. 523, 531, 512 A.2d 217 (1986); and that he knowingly and intelligently waived his privilege against self-incrimination. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *State* v. *Gray,* supra, 533; *State* v. *Toste,* 198 Conn. 573, 579, 504 A.2d 1036 (1986). As with any claim of error, however, a claim of insufficient proof of *Miranda* advisement must be raised below before we will consider the issue on appeal. Practice

Book § 4185 (formerly § 3063); *State* v. *Bartee,* 167 Conn. 309, 314, 355 A.2d 250 (1974). Moreover, the defendant has not sought review of this claim under the narrow "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973). We therefore decline to review the defendant's claim of error.

There is no error.

In this opinion the other judges concurred.