## STATE OF CONNECTICUT *v.* EARL REDDICK
### (5421)

DUPONT, C. J., BORDEN and STOUGHTON, Js.

Argued February 9—decision released August 2, 1988

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney for the appellee (state).

STOUGHTON, J. The defendant was convicted, after trial to a jury, of burglary in the first degree, in violation of General Statutes § 53a-101 (a) (1), and criminal possession of a firearm, in violation of General Statutes § 53a-217. From that judgment, the defendant appeals.

Three of the claims the defendant presses on appeal will not be reviewed owing to the defendant's failure to comply with Practice Book § 4065 (d), which expressly provides that briefs *shall* contain "[t]he argument, divided under appropriate headings into as many parts as there are *points to be presented* . . . ." The defendant has chosen to disregard this clear directive and, accordingly, we refuse to review any claim or any alternative claim to a properly briefed claim which has been presented and argued by way of footnotes, notwithstanding the fact that they are set forth in the preliminary statement of issues.[1]

Confining our analysis to the arguments properly set forth in the body of the defendant's brief, the assignments of error can be classified as follows: (1) error on the part of the trial court in denying his motion to suppress certain evidence; (2) error on the part of the trial court in denying his motion to suppress certain statements by him on two separate theories; (3) error on the part of the trial court in admitting a statement made to the police by a witness against the defendant; (4) error on the part of the trial court in its instruc-

---

[1] These claims of error relate to the court's charge to the jury. The defendant sought review under the rule of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), with respect to two of these and for the other review either as a preserved error or as "plain error" under Practice Book § 4185.

tions to the jury; (5) misconduct on the part of the prosecutor in closing argument; and (6) that General Statutes § 53a-217 is unconstitutional.

A jury could reasonably have found the following facts: On October 23, 1985, at sometime around 4 p.m., Joseph McAlpine was leaving his apartment at 35 Springside Avenue, in New Haven, when the defendant and another man exited an apartment leased to Rose Hamilton. The two men then walked into an apartment across the hall. One of the two men was about high school age, the other somewhat older. The apartment they went into was occupied by Glen Shanbrom, who had a history of mental problems. When Hamilton returned to her apartment, she found the door unlocked, the apartment ransacked and jewelry, silverware, and a clock/radio missing. The point of entry to the apartment was the bathroom window.

Two days later, Kyle Collins met with Detective Leonard Pastore of the New Haven police department. Collins complained to Pastore that the defendant had threatened him with a gun. On the basis of this complaint, Pastore and Detective Anthony Dilullo proceeded to 35 Springside Avenue, Apt. D-1. Shanbrom, the tenant of that apartment, answered the door and allowed the officers inside. A male, later identified as Bobby Groomes, was in the living room with a female. Pastore and Dilullo then proceeded to a bedroom where the defendant was lying in bed. The defendant awoke and made a sudden move for his pillow, whereupon he was ordered out of bed at gunpoint and handcuffed. One of the officers looked under the pillow and discovered a loaded revolver in a holster underneath. The defendant was read his rights as required by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), after which he indicated that the gun was his uncle's and that he had no permit for it. Groomes later gave a statement to the police concerning the bur-

glary. He also turned over several items which Hamilton later identified as missing from her apartment two days earlier.

The defendant had moved into Shanbrom's apartment sometime after Groomes and Collins had moved there. The defendant occupied the main bedroom in the apartment, while Groomes occupied a sofa in the living room. The gun was in the defendant's possession during his stay at Shanbrom's apartment. Shanbrom was fearful of the defendant and was in no way connected to the burglary.

I

## THE COURT'S DENIAL OF THE DEFENDANT'S MOTION TO SUPPRESS

The defendant commences his attack upon his convictions by asserting that the trial court erred in denying his motion to suppress evidence seized at apartment D-1. He argues that the "search" beneath the defendant's pillow exceeded the scope of a valid search incident to an arrest. We disagree.

The police went to the apartment at 35 Springside Avenue with outstanding warrants for the defendant's arrest and a recent complaint concerning the defendant's use of a gun. When they knocked at the door, one of the occupants, Shanbrom, allowed them inside. When they proceeded to the bedroom occupied by the defendant, he made a sudden moved toward his pillow. At that point, he was ordered not to move and was handcuffed, while one of the detectives lifted the pillow to determine what was underneath.

It is well established that when an individual is placed under arrest in a dwelling, police may search not only the defendant's person incident to that arrest, but any area into which that person might reach to grab a weapon or to destroy a piece of evidence. In *Chimel*

v. *California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the United States Supreme Court reasoned that "[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." See *State* v. *Shaw,* 186 Conn. 45, 438 A.2d 872 (1982); *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). The transcript indicates that the seizure of the gun was simultaneous with the defendant's arrest. Even had the defendant already been handcuffed, it is not inconceivable that he may have grabbed for a gun, especially one that was slipped under a pillow as contrasted with one located in a drawer or closet. Moreover, we note that there were two other people in the apartment when the arrest occurred, one of whom had been described to the police as being somewhat mentally retarded and under care for psychological problems. The police were justified in lifting the pillow in an attempt to find the gun they had been told the defendant slept with. Hence, the police acted legitimately in looking under the pillow as the defendant was in the immediate area. There is no error as to this claim. Because the search was valid and proper, the defendant's related argument that his subsequent statement to the police was the fruit of an illegal search necessarily fails.

## II

### THE ADMISSION OF THE DEFENDANT'S STATEMENT

The defendant next claims that his statements regarding the revolver ought to have been suppressed on the grounds (1) that the record does not demonstrate that adequate warnings under *Miranda* were given, and (2) that, even if they were, the defendant did not knowingly and intelligently waive his rights. Although the defendant never raised this precise issue at trial and,

in fact, impliedly acknowledged at trial that he did receive his warnings, he nonetheless claims review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

During argument on his motion to suppress, the defendant never argued that proper, complete warnings had not been given. His argument was, rather, that owing to the time of the arrest, the defendant was not as alert as he would have been otherwise, and the state could not meet its burden of showing a knowing and intelligent waiver. In *State* v. *Vasquez,* 9 Conn. App. 648, 652–53, 520 A.2d 1294, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987), this court refused to review an identical claim which had not been raised below. The adequacy of the warnings was assumed by both the state and defendant and the court was never given the opportunity to rule upon it. "The trial judge presiding over a criminal case is not engaged in taking a Kafkaesque academic test which he may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." *State* v. *Cosby,* 6 Conn. App. 164, 174, 504 A.2d 1071 (1986); *State* v. *Vasquez,* supra, 653. Moreover, by the defendant's failure to assert the inadequacy of the warnings at trial, the state was deprived of the opportunity to establish their adequacy. We therefore decline to afford review to this claim under *State* v. *Evans,* supra.

The next, related claim of the defendant is that, even if adequate warnings were given, the state failed to demonstrate that the defendant knowingly and intelligently waived his rights and thus it was reversible error for the trial court to admit his statements pertaining to the revolver. We disagree. We accept the defendant's argument that it is the state's burden to establish that any waiver is voluntary and knowing. Voluntariness is established by the totality of the circumstances and it falls upon the state to establish by

a preponderance of the evidence that a valid waiver was effected. *State* v. *Gray,* 200 Conn. 523, 532, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

Applying this standard, the testimony adduced indicates that the defendant had been in custody only a brief period before being questioned by the police. The police officers testified that he had been given his *Miranda* warnings. Moreover, the questioning took place in the familiar surroundings of the kitchen of the apartment occupied by the defendant. The defendant was not harassed or threatened in any way. The defendant, according to the testimony, willingly answered questions about the gun and at no time refused to answer any questions. Each of the above factors indicates a valid waiver. While it is true that the duty is not on the defendant to establish that a waiver was invalid, the state need only establish by a preponderance of the evidence that a waiver was valid. The only evidence produced by the defendant to indicate that the waiver was invalid was the time of his arrest, 5 a.m. The defendant never testified that he did not understand the warnings or was unfamiliar with criminal proceedings. *State* v. *Pellegrino,* 194 Conn. 279, 289, 480 A.2d 537 (1984). "[A] court cannot supply evidence that is lacking." *State* v. *Harris,* 188 Conn. 574, 581, 452 A.2d 634 (1982). The court did not err in admitting the statements.

## III

## THE ADMISSION OF GROOMES' STATEMENT

The defendant next claims that the trial court erred in admitting a portion[2] of Groomes' statement to the

---

[2] The defendant also claims that the entire statement given by Groomes was submitted to the jury. The transcript indicates, however, that it was not. The state's attorney, who prosecuted the case at trial, vigorously urges that that was not what transpired and the condition of the exhibit mark-

police on the ground that it was hearsay and did not fall within any exception. We disagree.

At trial, the defendant cross-examined Groomes in an attempt to highlight several areas in which his testimony at trial was inconsistent with the version of events set forth in his statement. The cross-examination also had the effect of suggesting that his testimony in court was purely the result of an agreement between him and the state concerning the disposition of a similar charge pending against him.

The statement of Groomes was clearly admissible as a prior consistent statement following his impeachment on the basis of motive or interest since the statement had been made prior to Groomes' negotiations with the state. *State* v. *Dolphin,* 178 Conn. 564, 571, 424 A.2d 266 (1979). The trial court also has the discretion to allow into evidence consistent portions of a statement from which inconsistencies have been offered by the defense, for purposes of rehabilitation, to place inconsistencies in context so as not to mislead the jury. *State* v. *Apostle,* 8 Conn. App. 216, 243–45, 512 A.2d 947 (1986). *State* v. *Cardona,* 6 Conn. App. 124, 130, 504 A.2d 1061 (1986). The trial court did not abuse its discretion in admitting the portion of the statement that made no reference to past misconduct of the defendant.

## IV

### ERROR RELATING TO THE COURT'S CHARGE

The defendant's next claim is that in instructing the jury on the elements of burglary, the court committed reversible error in stating that "[a] person is guilty of burglary in the first degree when he enters *or remains unlawfully* in a building with the intent to commit a

---

ings on the statement support this. In the absence of a clear showing by the defendant to the contrary, we presume the statement was properly excised.

crime therein . . . ."(Emphasis added.) The defendant asserts that since no evidence was adduced tending to show anything other than an initial unlawful entry into Hamilton's apartment, to mention that portion of the statute which reads "remains unlawfully" was to instruct the jury on a theory of liability which was not supported by the evidence. The defendant acknowledges that he did not except to the charge, but maintains that such a claim is nevertheless reviewable under *State* v. *Evans,* supra. We agree that the defendant's claim facially implicates a fundamental constitutional right. *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987). Accordingly, we will review the record to determine whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant. *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). After giving the defendant's claim the limited scope of review afforded under the second prong of our *Evans* analysis, we conclude that what the defendant represents to be a sufficiency of the evidence problem is, in fact, a claim that the trial court's instruction regarding the burglary statute was over inclusive.

While the trial court did read that portion of the burglary statutes dealing with the concept of remaining unlawfully, it specifically instructed the jury that Hamilton never testified that she gave anyone permission to be in her apartment. This effectively removed from the jury the option of finding the defendant guilty of burglary in the first degree on the theory that Hamilton somehow invited him in and he stayed beyond the point that he was privileged to do so. The defendant has not demonstrated how he has been deprived of a fundamental constitutional right and a fair trial as the result of the court's instruction. Even if this claim merits review under *State* v. *Evans,* supra, we find that there was

no possibility that the jury was misled into mistaking the issues that it was to determine. *State* v. *Townsend,* 206 Conn. 621, 627, 539 A.2d 114 (1988).

The defendant had submitted a request to charge that the jury may draw no adverse inferences from his refusal to testify. General Statutes § 54-84 (b). The defendant also takes issue with that part of the instruction in which the court stated to the jury that it could not draw any inference from the fact that the defendant did not testify, and added that the rule was based upon the defendant's right "to remain silent and simply in effect to say to the State, you say I did these things, well, you prove it. *Why should I help you out in any way?"* (Emphasis added.) The defendant did not except to this portion of the charge, but we will consider it as having been encompassed by the request to charge. *State* v. *Marshall,* 3 Conn. App. 126, 128, 485 A.2d 930 (1985). We agree with the defendant that the trial court's embellishment of "[w]hy should I help you out in any way" can be viewed as suggesting that had he taken the stand it would have helped to prove the state's case. The question to be resolved, therefore, is whether the comment was harmless beyond a reasonable doubt.

The disputed statement amounted to one line of a charge which occupied approximately sixteen pages in the transcript. It occurred in a portion of the charge in which the court repeatedly emphasized that the defendant had no obligation whatsoever to refute the charge and that the burden of proof rested with the state at all times. " 'To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole we eschew critical dissection . . . thereby not passing upon the instructions attacked in "artificial isolation" from the whole charge. . . . The charge must be considered from the standpoint of its

effect on the jury in guiding them to a proper verdict.' *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984), quoting *State* v. *Corchado,* 188 Conn. 653, 660–61, 453 A.2d 427 (1983)." *State* v. *Marshall,* supra, 129.

We find that the brief and isolated nature of the comment, viewed in the context of the charge as a whole, could not have led the jury to conclude that had the defendant taken the stand he would have furnished information which would have assisted the state. The error was harmless beyond a reasonable doubt.

The defendant presses a related claim that the trial court erred in failing to instruct the jury that an inference based on circumstantial evidence may be drawn only if the basic fact is proven beyond a reasonable doubt. Once again, the defendant failed to preserve this claim at the trial level and, argues that the claim is reviewable under *State* v. *Evans,* supra. We accept the defendant's argument that any instruction which tends to undermine the state's burden of establishing every element of the offense beyond a reasonable doubt facially implicates a fundamental constitutional right. *State* v. *DelVecchio,* 191 Conn. 412, 420, 464 A.2d 813 (1983); *State* v. *Peay,* 13 Conn. App. 578, 581, 538 A.2d 708 (1988); *State* v. *Biggs,* 13 Conn. App. 12, 20, 534 A.2d 1217 (1987). Here, however, there was no such misleading instruction. The defendant has failed to point to even one case, nor do we know of one, which holds that a court is required specifically to instruct the jury that an inference can be drawn only if a subordinate fact is proven beyond a reasonable doubt. The instructions were not misleading or confusing. Thus, there is no record sufficient to raise a claim of constitutional dimension and we decline to review it further.

The defendant also requests that we review under *State* v. *Evans,* supra, another portion of the court's instruction that was not objected to. This portion of

the charge was as follows: "Whatever you do, don't create any issues for yourself. Trade views, listen to the others, make your own point of view known, but don't create any issue that has not been put forward by the lawyers. Believe me, they are very, very capable of putting before you whatever you need to know. For instance, don't go in there and start speculating about some third party being involved in these things a fourth party or fifth party or sixth party. You know what the state is claiming. You know what the defendant was cross-examined on." The defendant asserts that this instruction created a "mandatory burden-shifting presumption" which "placed on defense counsel the burden of pointing out the basis of a reasonable doubt before such doubt could be considered by the jury." The defendant's argument in this portion of the brief is barely comprehensible, but the thrust of his argument is that the instruction operated to deprive the defendant of his right to a fair trial and to have a jury determine whether the state had proven beyond a reasonable doubt each element of the offenses charged and to have issues of fact decided by a jury not by the court.

We accept that the defendant's claim facially implicates a fundamental constitutional right. Giving the record the limited review afforded it under the second step in our *Evans* analysis, however; see *State* v. *Thurman*, supra, 306; we find that this claim is not truly of constitutional dimension, but rather is characterized as such by the defendant. The trial court's instructions, by its very terms, expressly allowed the jury to consider any theory or claim put forth by the defendant. Moreover, the court clearly instructed the jury that it was permissible to entertain "doubt that is based on reason and [that] grows out of the evidence or the lack of evidence," and if it did, it could not convict the defendant. His claim that the charge that the jury not

engage in speculation somehow undercut his right to a fair trial and to have the state prove each element of the offense beyond a reasonable doubt is simply not supported by the record. *State* v. *Foshay,* 12 Conn. App. 1, 23, 530 A.2d 611 (1987).

## V

### ERROR RELATING TO THE PROSECUTOR'S CONDUCT DURING CLOSING ARGUMENT

The defendant next claims that pervasive misconduct on the part of the prosecutor during closing argument so "inflamed and diverted" the jury as to deny him his state and federal due process rights, his right to a fair and impartial jury, and his right to confront and cross-examine witnesses against him. The defendant concedes that this issue was not preserved for appellate review and, once again, maintains a claim is reviewable under *State* v. *Evans,* supra, as well as plain error. *State* v. *Williams,* 204 Conn. 523, 536, 529 A.2d 653 (1987). Specifically, the defendant alleges that the record adequately supports five separate categories of misconduct on the part of the prosecutor: (1) he appealed to the passions and emotions of the jury by seeking sympathy for the victim and a state's witness and by vilifying the defendant; (2) he argued facts not in evidence by acting as an unsworn "expert" witness and implied that the defendant engaged in prior similar misconduct; (3) he opined on the ultimate issue of the defendant's guilt and on the credibility of a witness; (4) he misstated evidence by arguing evidence only for impeachment purposes as substantive evidence; and (5) he "implied that exercising one's right to counsel was indicative of the defendant's guilt by attacking counsel's claims as tailored to fit the evidence."

It is well settled that when a defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, at the time they are

made or at close of argument, the right to press the claimed error is waived; *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Lubesky,* 195 Conn. 475, 484, 488 A.2d 1239 (1985); unless the remarks constitute a pattern of blantantly egregious misconduct indicating a deprivation of a fair trial. *State* v. *Williams,* supra, 537. When counsel fails to request a curative charge, we presume that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was jeopardized. *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). We have reviewed the record and we do not find that the prosecutor's remarks were so pervasive, inflammatory or suggestive as to support his claim that he has been clearly deprived of a fundamental constitutional right and a fair trial within the meaning of *Evans.* Nor do these remarks qualify for review under "plain error." Practice Book § 4185. The defendant has waived his right to raise his claim of prosecutorial misconduct on appeal. *State* v. *Tyler-Barcomb,* supra, 674.

## VI

### THE CONSTITUTIONALITY OF CONNECTICUT GENERAL STATUTES § 53a-217

The defendant challenges General Statutes § 53a-217 as violative of his right to bear arms, to due process and equal protection of the laws, and constitute a bill of attainder and an ex post facto law. The defendant did not raise this issue in the trial court. Our decision in *State* v. *Banta,* 15 Conn. App. 161, 180–85, 540 A.2d 91 (1988), is dispositive with respect to this issue. There is no merit to the defendant's claim.

There is no error.

In this opinion the other judges concurred.