## STATE OF CONNECTICUT *v.* RUBEN REYES
## (5511)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 7, 1988—decision released June 21, 1989

180

*Jon C. Blue,* former assistant public defender, with whom, on the brief, was *Joette Katz,* former public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Dennis J. O'Connor,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant takes this appeal from his conviction, after a jury trial, of the crimes of robbery in the first degree; General Statutes § 53a-134 (a) (4);[1] conspiracy to commit robbery in the first degree; General Statutes §§ 53a-48 (a)[2] and 53a-134 (a) (4); accessory to burglary in the first degree; General Statutes §§ 53a-101 (a) (1)[3] and 53a-8;[4] and conspiracy to com-

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[2] "[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[4] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission

mit burglary in the first degree; General Statutes §§ 53a-48 (a) and 53a-101 (a) (1). The defendant claims that the trial court erred (1) in allowing him to be improperly convicted of two counts of conspiracy arising out of a single agreement, (2) in charging the jury that it could convict him of burglary on the theory that he had remained unlawfully in a building when there was no evidence to support that theory, (3) in allowing him to be convicted of the crime of burglary in the first degree when there was insufficient evidence to support the conviction, and (4) in its charge to the jury on the deadly weapon or dangerous instrument element of the crime of burglary in the first degree.

The following is a brief summary of the evidence presented in this case. During its case-in-chief, the state presented the testimony of five witnesses. Maria Rivera testified that on June 18, 1985, she was living in an apartment in Hartford with her children and her mother, Marguerita Maldonado (the victim). At about 4:30 p.m., Rivera was at home with her three preschool children and her mother, who was in a back bedroom. Rivera was talking with a neighbor in her kitchen when she heard a knock on the door. She opened the door and saw a man whom she identified in court as the defendant, and a man she knew as David, who was later identified as David Ortiz. She did not observe any weapons. Ortiz told Rivera that he was looking for her mother. Rivera called her mother and went back to the kitchen to resume talking with her neighbor. She did not observe either man enter the apartment. About fifteen minutes later, she saw her mother crying and, on the basis of statements by her mother, called the police. A police officer subsequently came to the apartment,

of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

spoke with her mother, and left. The officer later returned with two men, neither of whom Rivera recognized. The officer then returned a second time with two different men, one of whom was Ortiz. Rivera did not recognize the other man. Rivera noticed that a radio was missing from her mother's room.

The victim, Marguerita Maldonado, testified that, when she opened the door in response to her daughter's call, "David pointed me with a gun." She described the gun as "big," extending the length of her hand and forearm. The defendant was with Ortiz. Ortiz put the gun to her head and told her to walk toward her bedroom. When they reached the bedroom, he told her to sit down. Her two year old granddaughter was in the bed. The victim told Ortiz that the girl was there, and he told her to "shut up." Ortiz looked in the victim's pocket for money, while his companion, whom she identified in court as the defendant, searched the mattresses and drawers. Ortiz continued to hold the gun close to her head. When no money was found, Ortiz took a large "boom box" radio. After the two men left, the victim saw them enter a black and yellow car parked outside. She made a note of the license number. She then told her daughter what had happened. About five days later, she selected the defendant's photograph from an array.

Jack Leitao, an officer in the Hartford police department, testified that he was dispatched to the victim's apartment at 4:33 p.m. on the day in question. Subsequently, after Leitao had broadcast over the police radio a description given to him by the victim, another officer, Joseph Sikora, arrived at the apartment with two men. One man was Ortiz. The other man was not identified and was released. Ortiz told Leitao where the victim's radio could be found. On the basis of that information, another officer, Michael Fallon, was dispatched to the given address and retrieved the radio. One week later, on June 25, 1987, Leitao showed the

victim a photographic array containing a photograph
of the defendant. She positively identified the photo-
graph of the defendant as that of the man who had been
with Ortiz.

Sikora testified that at 4:33 p.m. on the day in ques-
tion he heard a dispatch from Leitao. Approximately
five to ten minutes later, he saw a vehicle matching
the description drive by. It was a yellow Toyota with
a black top, bearing license number 3045B. Sikora took
the two men in the car to the victim's apartment, where
Ortiz was identified. The other man was released. No
weapons or radios were found in the car.

Fallon testified that on the afternoon in question he
received a dispatch to go to 199 Sigourney Street in
Hartford to search for an Hispanic male with a "boom
box" radio. The building at 199 Sigourney Street is a
large brick structure with several floors. No person
matching the description was found. On the third floor,
however, Fallon found a duffel bag and a large "boom
box" radio. The duffel bag contained socks, clothes, and
an identification card of Ortiz. The victim subsequently
identified the radio as hers. No weapons were found
in the bag.

The parties stipulated that the defendant's brother,
Rene Reyes, was the registered owner of a 1973 yel-
low and black Toyota bearing temporary registration
number 3945B.

The defendant presented the testimony of his brother
and Ortiz, as well as testifying on his own behalf. The
defendant testified that he was arrested in late August,
1985, but knew nothing about the incident for which
he was arrested and charged, other than what he sub-
sequently learned from Ortiz. The defendant denied
having seen Ortiz on the day in question. He testified
that, between the hours of 11 a.m. and 3 to 3:15 p.m.
on the day in question, he was working on his brother's

1973 Toyota, installing a new clutch. When he had finished, his brother took the car out for a test drive. At about 3:30 to 3:45 p.m., his brother returned, stating that the car had been stolen. At about 5 p.m., the defendant called the police, at his brother's urging, to report the theft. The woman who answered the telephone informed the defendant that the car had been towed incident to an arrest. The defendant spent the entire afternoon at home.

The defendant's brother testified that he took the car out for a road test shortly after 3 p.m. and parked it at the corner of Park and Putnam Streets in Hartford while he went to get some milk. He left the keys in the car and the engine running. When he returned, the car was gone.

David Ortiz testified that, at about 1:30 p.m. on the day in question, he purchased what he thought were drugs from the victim. He then went to his ex-girlfriend's house, where he discovered that the drugs were "no good." He stole a car parked at the corner of Park and Putnam Streets and drove it to the victim's apartment. He did not have a gun, and he was alone. The victim opened the door and invited him in. They stood just inside the door in the living room. He told her that the drugs were no good and that he wanted his money back. She told Ortiz that her supplier had already taken the money, and gave him her radio until the next day, when she could give him his money back. He never went to her bedroom. He took the radio to the house of a friend named Carlos who lived at 199 Sigourney Street. Carlos asked him to give a man a ride downtown. Ortiz and the other man were arrested while driving downtown.

The state presented the testimony of two police officers in rebuttal. Lucien Roy testified that he was an officer in the Hartford police department assigned to

the records division. He testified that when the department receives a stolen vehicle complaint, the complaint is routinely entered into the police department's computer. A computer printout concerning the 1973 Toyota in question showed no indication that the car had been reported stolen. Leitao testified that there was a "possibility" that this information might not have been entered into the computer.

Leitao testified that he talked to Ortiz at the time he arrested him and asked him who the other party was. Ortiz had responded that it was the defendant and that both the defendant and the radio could be found at 199 Sigourney Street.

The defendant's first claim of error is that the trial court erred in allowing two judgments of conviction for conspiracy to be rendered when the evidence of the state, if credited beyond a reasonable doubt, clearly demonstrated that the defendant could have entered into only one agreement. The state concedes that the evidence established that Ortiz and the defendant entered into a single agreement to burglarize and rob the victim and that, therefore, the trial court erred in allowing two conspiracy convictions to stand.

Although the defendant did not raise this claim in the trial court; see Practice Book § 4185; we will address his claim because it implicates plain error by the trial court. See *State* v. *Kitt,* 8 Conn. App. 478, 489, 513 A.2d 731 (1986), cert. denied, 202 Conn. 801, 518 A.2d 648 (1987).

Where the evidence establishes only one agreement, there can be only one conspiracy conviction, even though the conspirators planned, as part of the agreement, to engage in conduct violative of more than one criminal statute. *State* v. *Stellato,* 10 Conn. App. 447, 456–57, 523 A.2d 1345 (1987); *State* v. *Kitt,* supra. In

this case, the parties correctly state that the evidence establishes a single agreement between the defendant and Ortiz. Accordingly, one of the two conspiracy convictions must be set aside. See *State* v. *Stellato,* supra, 456–57.

Ordinarily, in cases involving duplicitous conspiracy convictions, this court sets aside the judgment convicting the defendant of the conspiracy count relating to the substantive offense of lesser severity. *State* v. *Stellato,* supra. In this case, although both of the substantive crimes are class B felonies, it is only the fourth count, conspiracy to commit burglary, that is punishable by a nonsuspendable five year minimum term. On each count of conspiracy, the defendant was sentenced to fifteen years, to be served concurrently. Under these circumstances, we set aside the judgment of conviction on the second count, conspiracy to commit robbery in the first degree; General Statutes §§ 53a-48 (a) and 53a-134 (a) (4); and remand to the trial court with direction to render a judgment of acquittal on that count.

The defendant's second claim is that the trial court impermissibly charged the jury that it could find the defendant guilty of burglary if it should find that he "unlawfully remained" on the victim's premises, when there was no evidence to support that theory. The defendant contends that the trial court not only engaged in the disapproved practice of charging the jury on a statutory alternative that there was no evidence to support; see *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987); it went further, supplying the jury with "a hypothetical scenario that would support a conviction, even though that scenario had not even been hinted at by any of the witnesses appearing in the case." The state, on the other hand, contends

that there was sufficient evidence of a lawful entry with an unlawful remaining to justify the trial court's instruction on unlawful remaining.

At no time in the trial court proceedings did the defendant alert the court to any objection regarding an instruction to the jury on the "unlawful entry or remaining" element of the burglary charge. The defendant maintains, however, that his claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), pursuant to *State* v. *Williams,* supra. The defendant's claim does facially implicate the fundamental constitutional right of an accused to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. See *State* v. *Reddick,* 15 Conn. App. 342, 350, 545 A.2d 1109, cert. denied, 209 Conn. 817, 551 A.2d 758 (1988), citing *State* v. *Williams,* supra. We will therefore review the record to determine whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant. See *State* v. *Huff,* 10 Conn. App. 330, 334, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987); *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

The following facts are relevant. In the third count of the amended information, the state charged the defendant with the crime of burglary in the first degree, in violation of General Statutes § 53a-101 (a) (1). In a bill of particulars filed in response to the defendant's motion, the state charged that the defendant "did intentionally aid another person to engage in conduct constituting the crime of Burglary in the First Degree, in that the defendant and another person *entered or remained unlawfully* in a building with the intent to commit a crime therein, and the other person was armed with a deadly weapon or dangerous instrument, in violation of General Statutes §§ 53a-101 (a) (1) and

53a-8, Accessory to Burglary in the First Degree."
(Emphasis added.) In its charge, the trial court
instructed the jury on both entering and remaining
unlawfully in a building, elaborating on the meaning
of "unlawful remaining" and giving the following exam-
ple: "Now, even supposing that Mrs. Maldonado had
invited David and this other male into the house, they
came in and went into the bedroom and then displayed
the weapon, then you would have to question whether
they lawfully remained. So, that also can be the basis
of a burglary."

During its deliberations, the jury requested a clarify-
ing instruction on the difference between robbery and
burglary. The court instructed the jury on burglary as
follows: "[I]t is the *illegal entry* into the dwelling with
the intent to commit a crime therein. . . . *You have
to illegally enter* the dwelling. In this case, if you recall,
there was the testimony of Mrs. Maldonado that Ortiz
and the other person with him, and the state claims
that it was the defendant, forced their way into the
apartment. So, *that is an illegal entry* because they
were not invited into the apartment. They only have
a right to be in the apartment if they are invited. *It
is the illegal entry* with the intention of committing a
crime."

The jury foreperson then asked the court whether
burglary had to involve a forced entry. The jury was
excused while the court and counsel pondered how to
address the question. In response to the court's sug-
gestion that the statutory definition of the term "enters
or remains unlawfully" be read to the jury, defense
counsel indicated that the defendant had no objection.
Accordingly, the court then instructed the jury in
accordance with General Statutes § 53a-100 (b), which
provides that "[a] person 'enters or remains unlawfully'
in or upon premises when the premises, at the time of

such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so."

In this case, the state charged the defendant, in a bill of particulars phrased in the disjunctive, with "enter[ing] *or* remain[ing] unlawfully." An information charging the defendant with alternate methods of committing one substantive crime is sufficient to inform the defendant adequately of the nature of the charge against him for purposes of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. *State* v. *Hufford,* 205 Conn. 386, 397, 533 A.2d 866 (1987); see also *State* v. *Belton,* 190 Conn. 496, 501 n.6, 461 A.2d 973 (1983). The defendant in this case had notice that the state was charging him with burglary based on his alleged act of *either* unlawfully entering *or* unlawfully remaining, thereby enabling him to prepare his defense, avoid prejudicial surprise, and plead his conviction or acquittal in bar of any future prosecution. *State* v. *Hufford,* supra. In instructing the jury on both unlawful entry and unlawful remaining, therefore, the trial court simply instructed the jury on the law defining the statutory alternative methods with which he was charged.[5] Under these circumstances, the defendant's claim cannot be considered to be of constitutional dimension unless there was insufficient evidence to support submission of the factual question to the jury; see *State* v. *Williams,* supra; *State* v. *Arnold,* 201 Conn. 276, 280, 514 A.2d 330 (1986); or the charge was overinclusive

---

[5] Compare cases involving jury instructions that had the effect of enlarging the offense with which the defendant was charged. See, e.g., *State* v. *Franko,* 199 Conn. 481, 489–90, 508 A.2d 22 (1986); *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983); *State* v. *Messier,* 16 Conn. App. 455, 469, 549 A.2d 270 (1988); *State* v. *Peterson,* 13 Conn. App. 76, 83–86, 534 A.2d 1237 (1987); *State* v. *Trujillo,* 12 Conn. App. 320, 323–29, 531 A.2d 142 (1987), cert. denied, 205 Conn. 812, 532 A.2d 588 (1988); *State* v. *Newton,* 8 Conn. App. 528, 530–38, 513 A.2d 1261 (1986).

in that the trial court read more of a definitional statute to the jury than the circumstances called for. See *State* v. *Townsend,* 206 Conn. 621, 627, 539 A.2d 114 (1988); *State* v. *Reddick,* supra, 350.

We agree with the state that the evidence was sufficient to sustain the trial court's instruction on, and example of, unlawful remaining, and we therefore conclude that the defendant's claim is not truly of constitutional dimension. The trial court suggested hypothetically to the jurors that, if the victim had invited Ortiz and "this other male" into the house, and a weapon was displayed once they were inside, the jurors would "have to question" whether the men unlawfully remained. The court concluded that "that also can be the basis of a burglary." Although neither the victim's nor Ortiz' version of events independently established an "unlawful remaining," the trial court could nevertheless have reasonably concluded that the cumulative evidence was sufficient to support an inference that the defendant "unlawfully remained" on the victim's premises and that, therefore, submission of the factual question to the jury was warranted.

The jury was presented with two different versions of the events in question, one offered by the victim and one offered by Ortiz. The testimony conflicted on many points. For instance, the defendant and Ortiz testified that the defendant was not present on the date in question, while the victim and her daughter testified that the defendant was present, and a police officer testified that, upon his arrest, Ortiz implicated the defendant. Ortiz denied having told the police officer that the defendant was involved. In light of the conflicting testimony, evaluation of credibility was particularly crucial in this case, and the credibility of the three major witnesses had been placed in question. The victim's credibility was placed in question by her testimony that she had in the past been convicted for possession of

narcotics. Ortiz's credibility was placed in question by his testimony that (1) on the day in question he had had four drinks of Yukon Jack and was high on pot, (2) at the time of the incident he had a drug habit, and (3) he had been convicted in the past of the crimes of selling heroin, first degree robbery, and second degree manslaughter. The defendant's credibility was placed in question by his admission that he had in the past been convicted of two felonies. It is the trier's function to determine the facts and to draw logical and reasonable inferences from those facts. *State* v. *Smith,* 15 Conn. App. 122, 127, 543 A.2d 301, cert. denied, 209 Conn. 805, 548 A.2d 441 (1988). The trier may draw reasonable and logical inferences from facts proved beyond a reasonable doubt, or from facts it has found as the result of other inferences. *State* v. *Giorgio,* 2 Conn. App. 204, 477 A.2d 134 (1984); and is entitled to credit some portions of the testimony of a witness and to discredit other portions. *State* v. *Carter,* 196 Conn. 36, 46, 490 A.2d 515 (1985); *State* v. *Rothenberg,* 195 Conn. 253, 257, 487 A.2d 545 (1985); *State* v. *Hoyeson,* 154 Conn. 302, 224 A.2d 735 (1966). The trier may rely on its common sense, experience and knowledge of human nature in deciding among conflicting inferences that logically and reasonably flow from the same basic fact. *State* v. *Rodgers,* 198 Conn. 53, 59, 502 A.2d 360 (1985), appeal after remand, 207 Conn. 646, 542 A.2d 1136 (1988); *State* v. *Carter,* supra, 45; *State* v. *Johnson,* 14 Conn. App. 586, 597, 543 A.2d 740, cert. denied, 209 Conn. 804, 548 A.2d 440 (1988).

We conclude that the evidence was sufficient to justify submission to the jury of the factual question of whether the defendant entered *or* remained unlawfully because the trier could reasonably find either an unlawful entry or an unlawful remaining. "To enter unlawfully contemplates an entry which is accomplished unlawfully, while to remain unlawfully contemplates

an initial legal entry which becomes unlawful at the time that the actor's right, privilege or license to remain is extinguished." *State* v. *Belton,* supra, 500. The trial court could reasonably conclude that the jury might (1) accept the testimony of the victim and her mother that the defendant was present, rejecting Ortiz' testimony that the defendant was not present, and (2) accept Ortiz' testimony that the victim invited him into the apartment and infer that the victim permitted the defendant to enter as well. The jury could have found that the defendant's "right, privilege, or license to remain [was] extinguished"; id.; if it accepted the victim's testimony to the extent of finding that Ortiz had a gun and that the gun was drawn, while inferring from Ortiz' testimony that a dispute arose inside the premises and that the gun was drawn during the dispute. In view of Ortiz' testimony that he had a "drug habit" at the time of the incident, that he was disgruntled by the victim's allegedly having sold him "bad drugs," and that he was physically ill on the afternoon in question as a result of the physical effects of withdrawal, such findings would not be unreasonable.

An "unlawful remaining" can be said to have occurred when the evidence supports a finding that the defendant pointed a gun at the one who permitted him to enter. General Statutes § 53a-100 (b) provides, in pertinent part, that a person " 'enters or remains unlawfully' in or upon premises when . . . the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-101 (a), which defines the crime of burglary in the first degree, is intended to prohibit the kind of "remaining" which is likely to terrorize occupants. *State* v. *Thomas,* 210 Conn. 199, 207, 554 A.2d 1048 (1989); *State* v. *Cochran,* 191 Conn. 180, 185, 463 A.2d 618 (1983). A drawn gun creates an inherently threatening situation. Evidence that a defendant subsequently pointed a gun at one who had the right to admit him

to the premises, and did admit him to the premises, clearly can form the basis for the inference that consent to remain was implicitly withdrawn and thus that the individual "unlawfully remained" within the meaning of the statute.

On the basis of our determination that the evidence was sufficient to support a finding that the defendant "unlawfully remained," as suggested by the trial court, we conclude that the trial court was justified in submitting to the jury the factual question of whether the defendant either entered unlawfully or entered lawfully, but remained unlawfully. Under these circumstances, it is clear that the defendant's claim is not truly of constitutional proportions.

The defendant's third claim of error is that there was insufficient evidence to support a conviction of the crime of burglary in the first degree because the state failed to prove beyond a reasonable doubt that Ortiz was armed either with a "deadly weapon" or a "dangerous instrument." The defendant concedes that this claim was not raised in the trial court, but again seeks review under *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). The defendant has stated a claim implicating the federal and state constitutional guarantee that a criminal defendant may be convicted only upon proof of each element of the offense beyond a reasonable doubt. See *State* v. *Dickson,* 10 Conn. App. 462, 464, 523 A.2d 935 (1987). Under such circumstances, we review the record in a limited way to determine whether it adequately supports the defendant's allegation that his claim is of constitutional proportions. See *State* v. *Huff,* supra; *State* v. *Thurman,* supra. We conclude that the record does not support that claim. In view of the fact that there was evidence from which the jury could conclude that Ortiz was armed with a

gun, which the victim described as being as long as her arm, the defendant's claim that he has been deprived of a constitutional right lacks support.

The defendant's final claim is that the trial court erred in its instructions to the jury on the "deadly weapon or dangerous instrument" element of the crime of burglary in the first degree in that it (1) erroneously defined these terms, and (2) erroneously submitted both statutory alternatives to the jury. The defendant neither submitted a request to charge nor excepted to the instructions as given. Generally, we will not consider a claimed error regarding the giving of or failure to give an instruction unless the matter is covered by a written request to charge or exception has been taken. Practice Book § 852; *State* v. *Brown,* 199 Conn. 14, 26, 505 A.2d 690 (1986). We need not review a claim that was not distinctly raised at trial. Practice Book § 4185. The defendant claims review under *State* v. *Evans,* supra. Because the defendant's claim implicates his fundamental constitutional right to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt; see *State* v. *Williams,* supra, 363; we review the record in a limited way to determine whether the claim is truly of constitutional proportions. *State* v. *Huff,* supra; *State* v. *Thurman,* supra.

We have reviewed the record and conclude that review of the defendant's claims under *State* v. *Evans,* supra, is inappropriate because the record does not adequately support a claim that the court's charge to the jury deprived the defendant of a fundamental constitutional right.

There is error in part, the judgment of conviction on the second count of the information, conspiracy to com-

mit robbery in the first degree, is set aside and the case is remanded to the trial court with direction to render a judgment of acquittal on that count.

In this opinion the other judges concurred.