[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO SUPPRESS EVIDENCE
The defendant has moved to suppress all of the drugs, weapons and money seized in Room #6 at 637-639 Howard Avenue, New Haven, Connecticut on March 23, 1998. The basis of the motion to suppress is that the entry and the search and seizure of evidence found in that room was in violation of the Fourth andFourteenth Amendments to the United States Constitution, and of Article 1, Section 7 of the Connecticut Constitution. This court conducted an evidentiary hearing on the motion on April 27, 1999.
The court finds that following facts have been proven. On March 23, 1998, Officer Reginald Sutton of the New Haven Police Department was in plain clothes driving an unmarked police car on Howard Avenue in New Haven. In the car with Officer Sutton was Officer Patricia Helliger, who was also in plain clothes. The car was approaching 637-639 Howard Avenue, a large Victorian style multi-family residence, which was well known to Sutton as a narcotics selling location. He had been assigned to narcotics investigations for about seven years, had participated in about ten search and seizures at that location, and had been involved in on-site arrests at that location. As the car approached 637-639 Howard Avenue, Sutton saw three black males standing on the porch when a fourth male, who was white, arrived and went up onto the porch. One of the black males, who was wearing a black leather jacket, and who was later identified as the defendant, appeared to engage in a drug sale to the white male. The other two black males were not involved in the sale. Sutton and Helliger decided to try and make a controlled buy of narcotics from the defendant, and called for backup. While waiting for the backup, they conducted surveillance. During the surveillance, which lasted between ten and fifteen minutes, Sutton saw the defendant engage in several hand to hand sales. He observed CT Page 6879 people arriving at the porch who would hand money to the defendant who would then give the buyers a small object which the buyer would put in their mouth or pocket and then leave. Each transaction took about ten seconds. Based on his training and experience, Officer Sutton believed that the defendant was selling narcotics. He also knew that drug dealers frequently carried guns or had guns available to them to protect their money and drugs.
Officers David Sydnor and Donald Harrison arrived as backup and Sutton and Helliger then left their car and approached the porch to make a purchase. At this point, the two uninvolved black males walked off the porch and down the street. The defendant entered the house at 637-639 Howard Avenue. Sutton and Helliger entered through the door and found themselves in a common hallway with stairs going to the second floor. Sydnor and Harrison were several feet behind them and Harrison had his badge exposed. The defendant was sitting part way up the stairs. The defendant realized that they were the police and ran up the stairs, took a right, and ran down the hall past two rooms, and entered his own room at the end of the hall. Sutton was yelling "police" as he and the others pursued the defendant. The defendant closed the door, and either locked it or at least partially secured it. Sutton was unable to open the door by using the doorknob. There was a short period of silence and then Harrison and Sutton, after two or three attempts, forced the door open with their shoulders.
The room the officers entered was about twelve feet by fourteen feet in size. The defendant was standing in the far left corner of the room directly opposite the door and facing the door when the officers entered. Immediately behind the defendant was an open window, about four feet to his right was an open closet, and about two feet to his left was a dresser with at least one drawer partially open. The closet was about two feet deep and four feet wide. There was no clothing hanging in the closet but there was clothing on the closet floor. The black jacket that the defendant had been wearing was on a chair near the entrance to the room. The defendant was arrested immediately and handcuffed.
Helliger was sent outside to look on the ground below the open window to see if the defendant had thrown a weapon or narcotics out of the window. Nothing was found outside.
Sutton looked in the open drawer of the dresser which was about two feet from where the defendant was standing and saw a CT Page 6880 plastic bag containing eleven glassine packets of what appeared to be narcotics. In the same drawer Sutton found in a pair of rolled up socks another plastic bag containing six glassine packets and $30.00.
Sydnor examined the closet. He moved the pile of clothes on the floor in an effort to see whether there were any drugs or weapons hidden there. When he moved the clothes he observed a piece of plastic sticking up about 1 inch between the floor boards. When he pulled the plastic directly up the floor board came up easily and exposed a shallow hole beneath the floor. The plastic that Officer Sydnor pulled on was a plastic bag identical to the bags that had already been found in the dresser. Officer Sydnor shone his flashlight in the hole and discovered four guns and more narcotics. The defendant was searched and while no weapons or narcotics were found on the defendant, he did have $66.00 in his pocket. The black jacket the defendant had been wearing, which was on a chair, was searched and $600.00 was found. This money was in six bundles of $100.00 each in rubber bands. The narcotics and guns found in the dresser and in the closet, and the money found on the defendant and in the black jacket were all seized.
The defendant offered evidence establishing that Room #6 was a room that he had been occupying for about three weeks. The state has conceded that the defendant has standing to move to suppress the items found in the room as set forth above. Therefore, the state must establish that the conduct of the police was constitutionally justified.
It is the state's claim that the police had probable cause to arrest the defendant before they entered the room, that the forced entry into the room without a warrant was fully justified based on hot pursuit and exigent circumstances, and that the searches conducted by the police were justified as valid searches incident to an arrest. The defendant claims that the police did not have probable cause to make an arrest before they entered the room, that exigent circumstances did not exist to justify a warrantless entry into his room, and that even if the police were legally entitled to enter the room and arrest the defendant, the searches conducted exceed the limits of a search incident to an arrest.
 "Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and CT Page 6881 of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed." (Internal quotation marks omitted.) State v. Velez, 215 Conn. 667, 672, 577 A.2d 1043
(1990). "[T]he existence of probable cause is to be determined on the basis of the collective information of the law enforcement organization as a whole and not solely on that of the arresting officer." State v. Cobuzzi, 161 Conn. 371, 377, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972); State v. Wilson, 153 Conn. 39, 42, 212 A.2d 75 (1965). State v. Gant, 231 Conn. 43, 63 (1994).
In this case a police officer trained and experienced in narcotics investigations observes what he reasonably believes to be are several hand to hand sales of drugs by the defendant. These sales, which are felonies, are taking place on the porch of a house which is well known to the police as a location for drug activity, where many drug arrests have been made, and where search and seizures have resulted in the seizure of weapons. In addition, when the police approached the defendant and he realizes who they are, he flees into his room and attempts to lock the door. Clearly the police had probable cause to arrest the defendant before the forced entry into the room.
Next the defendant claims that exigent circumstances did not exist which would justify the warrantless entrance into the room in order to arrest the defendant. The police were in hot pursuit of a person whom they had observed engaged in the commission of felonies, and this, in and of itself, justified the entry into the room.
 When a crime is committed in the presence of a police officer, no arrest warrant is necessary. General Statutes § 54-lf(a); see State v. Kaplan, 20 Conn. App. 183, 186, 565 A.2d 11 (1989) (statute applies to felonies and misdemeanors). The police may make a warrantless entry onto private premises on the exigency of pursuing a fleeing suspect. State v. Guertin, 190 Conn. 440, 454, 461 A.2d 963
(1985); State v. Reagan, 18 Conn. App. 32, 37, 556 A.2d 183
(1989). A suspect may not defeat an arrest, set in motion in a public place, by escaping to a private place. United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300
(1976). State v. Capozziello, 21 Conn. App. 326, 329. CT Page 6882
In addition to hot pursuit as a basis for entering the defendant's room, the entry was also proper because of the exigent circumstances that existed. The police had a reasonable belief, based on the totality of the circumstances, that if a quick arrest were not made, that the defendant would be able to destroy evidence or because of the propensity of drug dealers to have weapons available, might be able to obtain a weapon from somewhere in the room and thus endanger the safety of others.State v. Guertin, 190 Conn. 440, 448 1983).
The final claim by the defendant is that even if the entry and arrest were valid, the searches that then took place were improper because it went farther than a search of the defendant and the area "within his immediate control" which was first discussed and analyzed in Chimel v. California, 395 U.S. 752
(1969). Chimel and subsequent state and federal court decision allow the police to search a person who has just been arrested and the area within his immediate control so as to prevent the arrestee from gaining possession of a gun or destroying evidence. Immediate control is further described as "the area into which an arrestee might reach." Chimel, Id at 763.
The fact that the defendant was handcuffed at the time of the search does not affect the right of the police to search for weapons and destructible evidence in the area within his immediate control. State v. Reddick, 15 Conn. App. 342, 346
(1988).
In this case the search of the dresser drawer and the closet by the two officers was made because the drawer and closet were close enough to the defendant so that the officers reasonably believed that the defendant might have been able to reach both of these places in order to obtain a weapon. The court agrees. Obviously, an open dresser drawer only two feet from the defendant was easily accessible to him had he chosen to attempt to reach into it. The fact that no weapon was found in the drawer does not affect the right of the police to search that drawer and seize relevant evidence. As far as the closet is concerned, a person who knew that guns were located in the shallow hole discovered by Sydnor could have reached down to the closet floor and exposed the guns just as easily as Sydnor. The court finds that the searches of the dresser and the closet were searches of areas that were within the defendant's immediate control, were searches incident to a lawful arrest, and therefore were CT Page 6883 constitutionally permissible. The search of the defendant's person was also proper.
With respect to the search of the defendant's jacket which was found on the chair about twelve feet from where the defendant was standing, the court finds that the jacket in that location was not within the defendant's immediate control and therefore that search exceeded constitutional limits.
Accordingly, for the reasons above stated, the court overrules the motion to suppress the items seized by the police that were found on the defendant, in the dresser drawer and in the closet. The motion is granted as to the $600.00 found in the defendant's jacket.
William L. Hadden, J.