STATE OF CONNECTICUT *v.* WILLIAM KITT
(2190)

BORDEN, DALY and BIELUCH, Js.

Argued March 20—decision released August 12—upon
motion to reargue granted, modified November 11, 1986

*John O'Meara,* certified legal intern, and *Timothy H. Everett,* with whom, on the brief, was *Charles E. Oman,* certified legal intern, for the appellant (defendant).

*James G. Clark* and *Christopher Malany,* deputy assistant state's attorneys, with whom, on the brief, were *James Bernardi,* assistant state's attorney, and *Susan C. Marks,* deputy assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant has appealed from the judgment of conviction, after a jury trial, of one count each of burglary in the third degree, in violation of General Statutes § 53a-103; conspiracy to commit burglary in the third degree, in violation of General Statutes

§ 53a-48; larceny in the third degree, in violation of General Statutes § 53a-124; and conspiracy to commit larceny in the third degree, in violation of General Statutes § 53a-48. The defendant was sentenced to serve two concurrent three year sentences for the underlying counts of burglary and larceny, and two consecutive one year sentences on the conspiracy counts, for a total effective sentence of five years. The defendant claims that the court erred (1) in denying his motion for a mistrial and in failing to give the jury a cautionary instruction after the state attempted to argue that an adverse inference should be drawn from a witness' decision to remain silent, and (2) in permitting a charge of larceny in the third degree to go to the jury when the information charged him with larceny in the second degree.[1]

The jury could reasonably have found the following facts. The defendant was arrested early in the morning of April 10, 1983, outside the Diane Knitwear Fabrics factory in Norwalk. City police officers had been directed to the factory by a security service, which had informed the police that an alarm had been triggered at the plant. Patrolman Steven J. Tyska was the first officer to arrive on the scene. While waiting for other police units to arrive, Tyska heard a person walking on metal stairs and then observed the defendant coming down a factory fire escape. The defendant was placed under arrest by another officer who had arrived at the scene. Tyska thereafter climbed the fire escape and found a large cardboard box and a green garbage bag which together contained a total of 145 sweaters.

---

[1] The defendant also raises the claim that he received ineffective assistance of counsel. This claim is not properly raised on appeal and should be raised in a petition for a writ of habeas corpus. *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Rivera,* 196 Conn. 567, 571, 494 A.2d 570 (1985); *Miller* v. *Angliker,* 4 Conn. App. 406, 416–17, 494 A.2d 1226 (1985).

A subsequent search of the building by a police dog revealed two other men, Leon Knowles and James Leroy Moore, hiding under an empty box.

As a result of these events, the defendant was charged on April 11, 1983, in an information with (1) burglary in the third degree, in violation of General Statutes § 53a-103, (2) conspiracy, in violation of General Statutes § 53a-48, and (3) larceny in the second degree in violation of General Statutes § 53a-123. On April 29, 1983, the defendant pleaded not guilty to each of these three counts and elected to be tried by a jury. On the day before the trial commenced on these charges, June 13, 1983, the state filed an amended information, adding a fourth count of conspiracy to commit larceny in the second degree, in violation of General Statutes § 53a-48. Our record in this case does not disclose that the defendant was thereafter put to plea on this charge, although, at the outset of the trial on the following day, after the reading of the four-count information, the court informed the jury: "On these charges he was arraigned. On his arraignment, he pleaded not guilty."

On June 15, 1983, at the close of the state's case-in-chief, the defendant moved for a judgment of acquittal on the charges of larceny and conspiracy to commit larceny in the second degree, since the only evidence of the value of the 145 sweaters found by the police was below the minimum amount needed to establish larceny in the second degree.[2] The state then conceded that it could not prove that the defendant had committed larceny in the second degree, and declared its intention to ask for an instruction on larceny in the third degree. The court granted the motion for a judgment of acquittal, but in view of the state's request the court

[2] General Statutes § 53a-123 (a) (2) requires that for larceny in the second degree to be committed the property taken must exceed $5000 in value. The only testimony offered by the state placed the total value of the sweaters between $2500 and $3000.

stated that it would instruct the jury on larceny in the third degree. Additional motions for acquittal of the other charges were denied. In addition to charging on burglary in the third degree and larceny in the third degree, the court charged the jury on conspiracy to commit burglary in the third degree and conspiracy to commit larceny in the third degree. The jury found the defendant guilty of all four of these charges. The court thereafter sentenced him to serve an effective sentence of five years in prison.[3]

The defendant's first claim of error is that the trial court erred in denying his motion for a mistrial after permitting the prosecution to claim, before the jury, that an adverse inference should be drawn from Moore's decision to stand on his constitutional right to refuse to testify.[4] We find no error on this claim.

Moore was called to the witness stand by the *defense* despite his declared intention to stand on his fifth amendment right to refuse to testify because of his

---

[3] At the outset, we wish to note a defect in the proceedings below. It appears that the defendant was never put to plea on the fourth count of conspiracy to commit larceny in the second degree added by the state in its substituted information of June 13, 1983. Although an amended file copy of the information contains a notation that the defendant pleaded not guilty to that count at his original arraignment on April 29, 1983, the fourth count was not added to the charges by the state until the day before trial commenced. Previous to that time, there was only one charge of conspiracy filed against the defendant. This issue was not raised on appeal as a claim of error, but we deem it important to clear the record. In any event, however, the failure formally to arraign the defendant on the fourth count would be harmless error after trial and verdict. See *State* v. *Piskorski*, 177 Conn. 677, 748, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

[4] The defendant also claims that the court erred in failing to give a curative instruction to negate the effect of that inference. Indeed, although the court indicated that it would be receptive to any curative instruction which the defendant might propose, no such proposed instruction was ever offered by the defendant. This line of argument, therefore, is unavailing. *State* v. *Reddick*, 197 Conn. 115, 128, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

pending criminal prosecution. When he repeated his intention to exercise that privilege, the assistant state's attorney interrupted any further questioning, stating: "Well, your Honor, I believe he is pleading the fifth amendment on the grounds that the answer to the question might incriminate him." Subsequently, the assistant state's attorney asserted that "[the fifth amendment] can only be invoked when the question will expose the witness to a substantial hazard of prosecution. So, if he is admitting here that he has invoked his fifth amendment privilege because it will expose him to a substantial hazard of prosecution, I would like to have that." The defense now argues that these statements improperly raised the inference that Moore had refused to testify because, if he testified truthfully, he would have had to state that he did conspire with the defendant.[5]

Despite the fact that the assistant state's attorney's comments were made before the jury, the defendant never objected to those comments on the day when they were made. Rather, on the next day, the defendant moved for a mistrial on this ground. Under very similar circumstances, our Supreme Court, in *State* v. *Reddick*, 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), concluded that the record did not support the defendant's claim that the court had erred in denying his motion for a mistrial, in which he alleged that the state knowingly and repeatedly asked questions of the witness designed to elicit an invocation of the witness' fifth amendment privilege. Id., 126. In the present case, the defendant failed to make a timely objection to the prosecutor's remarks. Nor does the record reveal that the court should have granted the motion for mistrial.

[5] The defendant also claims that this line of argument was repeated by the prosecution during closing arguments. Since closing arguments were not transcribed, however, we cannot address this claim.

" '[S]ome courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. . . . A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' [*Namet* v. *United States,* 373 U.S. 179, 186–87, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963)]." *State* v. *Reddick, supra,* 126. In the present case, it was the defendant's question which prompted the witness to invoke the fifth amendment, not the state's examination. The assistant state's attorney, by his comments, merely clarified the basis for the witness' invocation of that right. " '[T]he prosecutor need not accept at face value every asserted claim of privilege, no matter how frivolous.' *Namet* v. *United States,* supra, 188." *State* v. *Reddick, supra,* 127. In order to protect the state's legitimate interest in the prosecution, the prosecutor had the obligation to verify that the witness was invoking his own fifth amendment right. In so doing, he neither attempted to build his case upon adverse inferences, nor did he attempt to afford critical weight to his case by the pursuit of such an inference. Further, as the trial court indicated, if the witness had testified, that testimony could be used against him at his own pending trial. Similarly, his decision not to testify at the defendant's trial could be relevant to the state's subsequent prosecution of the witness. Thus, the court did not err in denying the defendant's motion for a mistrial.

The defendant's second claim of error is that, since he was originally charged with larceny in the second degree in violation of General Statutes § 53a-123, the court erred in charging the jury on larceny in the third

degree in violation of General Statutes § 53a-124 because larceny in the third degree is only a lesser included offense of the form of larceny in the second degree contained in General Statutes § 53a-123 (a) (2). We agree.

On June 15, 1983, when the state rested its case-in-chief, the defendant moved for acquittal of the charges of larceny and conspiracy to commit larceny in the second degree. The court granted that motion but, in accordance with the state's concession that it could not prevail on the charge of larceny in the second degree and its request for a later instruction on larceny in the third degree, the court advised that it would later instruct the jury on larceny in the third degree.[6] The defendant did not object to this sequence of events at the time, or at any time thereafter before the close of evidence. Further, the defendant did not submit any proposed instructions for the court's charge to the jury, nor did he except to the court's charge on larceny in the third degree. The defendant, however, has asked us to review this claim pursuant to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). We conclude that such review is appropriate.

"The state's right to amend must be limited to substitutions that do not charge the defendant with an

---

[6] Although neither the state nor the court expressly alluded to an amendment of the third and fourth counts to the lesser charges of larceny in the third degree and conspiracy to commit larceny in the third degree, respectively, we conclude from the record that the information was amended in that fashion. The information filed by the prosecution on June 13, 1983, shows a handwritten or manuscript amendment of the third and fourth counts to the third degree of each offense. Practice Book § 624 provides, in relevant part, that "[a]fter commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced."

additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself. See U.S. Const., amend. VI; Conn. Const., art. I § 8. Unless the original and the amended informations charge the defendant with the same crime, as was the case in *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980), amendment is permissible only to charge a lesser included offense. The constitutional right to notice is satisfied as to lesser included offenses because, 'where one or more offenses are lesser than and included within the one charged, notice of the one charged constitutes notice of any lesser included offenses. See *Paterno* v. *Lyons,* 334 U.S. 314, 320–21, 68 S. Ct. 1044, 92 L. Ed. 1409 (1948); *Walker* v. *United States,* 418 F.2d 1116, 1119 (D.C. Cir. 1969); *State* v. *Conklin,* 115 N.H. 331, 335, 341 A.2d 770 (1975); *State* v. *Daniels,* 223 Kan. 266, 271, 573 P.2d 607 (1977).' *State* v. *Rodriguez,* 180 Conn. 382, 402, 429 A.2d 919 (1980)." *State* v. *Jacobowitz,* 182 Conn. 585, 590–91, 438 A.2d 792 (1981). In this case, we are faced with a claim that "the record adequately [demonstrates] that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70.

The underlying question for our consideration is whether larceny in the third degree is a lesser included offense of larceny in the second degree as that crime was charged by the state. If it is not a lesser included offense, then the defendant was not given adequate notice of the charge against him, and his conviction must be reversed.

In *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), the court set out four conditions which must be met before a party is entitled to an instruction on a lesser included offense: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it

is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588. (Footnote omitted.) In this case, it is the second *Whistnant* criterion with which we are concerned.

The defendant was charged with larceny in the second degree in violation of General Statutes § 53a-123. No subsection of the statutory crime was specified, nor was any bill of particulars filed. Thus, in measuring for the second criterion of *Whistnant,* we must determine whether it is impossible to commit any variant of larceny in the second degree as charged by the information without committing larceny in the third degree as defined by General Statutes § 53a-124, since our review of this criterion of *Whistnant* is limited to the contents of the information and any bill of particulars. *State* v. *Jacobowitz,* supra, 593.

General Statutes § 53a-123 defines larceny in the second degree to include all larcenies where "(1) The property consists of a motor vehicle, the value of which is two thousand dollars or less, (2) the value of the property or service exceeds five thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, or (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less." Larceny in the third degree is defined by General Statutes § 53a-124 to include larceny where "(1) The value of the property or service exceeds one thousand dollars;

or (2) the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant; or (3) the property consists of a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof." Hence, if the defendant committed larceny by taking a motor vehicle valued at less than one thousand dollars in violation of § 53a-123 (a) (1), or by taking less than one thousand dollars from the person of another in violation of § 53a-123 (a) (3), or from a public community by fraud in violation of § 53a-123 (a) (4), he would have committed larceny in the second degree without having concomitantly committed larceny in the third degree.

Factually, and by concession of the prosecution upon the motion of the defendant for acquittal, it is apparent that the state's intent then was to proceed with its prosecution of the defendant pursuant to § 53a-123 (a) (2). Therefore, the purpose of the amendment of the information during the trial and after acquittal of the charge of larceny in the second degree and related conspiracy charge was to adapt the prosecution to conform to the testimony that the value of the sweaters taken was between $2500 and $3000, a valuation below the minimum necessary for larceny in the second degree under § 53a-123 (a) (2), but fitting the parameters of larceny in the third degree defined in § 53a-124 (a) (1). Nonetheless, it is possible to commit a larceny in the second degree in violation of § 53a-123 as that crime was charged in this case without, at the same time, committing larceny in the third degree. Larceny in the third degree was not a lesser included offense of larceny in the second degree as originally charged. Therefore, the

court erred in permitting the state to amend the information from larceny in the second degree to larceny in the third degree.[7] *State* v. *Jacobowitz,* supra, 593.

Our inquiry cannot end with a determination of the merits of the defendant's claims of error in this case, however. In the course of reviewing this appeal, we have noticed a plain error which, in the interest of justice, must be remedied. Practice Book § 3063; *State* v. *Badgett,* 200 Conn. 412, 432 n.10, 512 A.2d 160 (1986). The defendant was improperly convicted of two counts of conspiracy arising out of a single agreement. The state acknowledged, during trial, that "there was a meeting of the minds between [the defendant, Knowles and Moore] to go and commit a burglary at Diane Knitwear on the night in question. And there is also evidence that the meeting of the minds was to go there with the specific intent to commit a larceny."

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Braverman* v. *United States,* 317 U.S. 49, 53, 63 S. Ct. 99, 87 L. Ed. 23 (1942); see also Marcus, Prosecution and Defense of Criminal Conspiracy Cases (1985 and Sup.) § 4.02 [1] [a], p. 4–5 n.13. "The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute. . . . For such a violation, only the single penalty prescribed by the statute can be imposed." *Braverman* v. *United States,* supra, 54. The courts of this state have long held

---

[7] In view of our discussion, infra, of the fourth count, namely, conspiracy to commit larceny in the third degree, we do not consider at this time the amendment of that count to this lesser degree of conspiracy to commit larceny.

that "[t]he gist of the offense of conspiracy is the unlawful combination and not the accomplishment of an objective or objectives, whether lawful or unlawful. . . . Whether the information charges that the combination was formed to accomplish one or many objectives is immaterial. 'A combination to commit several crimes is a single offence [sic]. . . . No matter how many violations of law may be concerted by the confederates, if the concert takes place at one time, the crime is single.' " (Citations omitted.) *State* v. *Hayes,* 127 Conn. 543, 588, 18 A.2d 895 (1941).

Accordingly, we find error in the defendant's conviction of two duplicitous conspiracy offenses, and in the court's subsequent imposition of consecutive one year prison sentences on those two convictions. This error relates to counts two and four of the amended information.

There is no error on the first count (burglary in the third degree, § 53a-103); there is error on the third count (larceny in the third degree, § 53a-124), the judgment is set aside as to that count and the case is remanded with direction to render judgment that the defendant is not guilty of larceny in the third degree; there is error in the judgment convicting the defendant of both the second count (conspiracy to commit burglary in the third degree, § 53a-48) and the fourth count (conspiracy to commit larceny in the third degree, § 53a-48), the case is remanded and the trial court is directed to exercise its discretion and set aside the conviction on either the second count or the fourth count and to render judgment that the defendant is not guilty on that count.

In this opinion the other judges concurred.