John Henry Wade was charged by four separate indictments with conspiracy to commit burglary in the first degree, conspiracy to commit robbery in the first degree, *Page 1256 
conspiracy to commit kidnapping in the first degree, and conspiracy to commit extortion in the first degree. The cases were consolidated for trial and a jury convicted him of all four charges. Wade was sentenced as a habitual offender to four consecutive terms of imprisonment for life, was fined $5,000 for each conviction, and was ordered to pay court costs and $1,000 to the Victim's Compensation Fund in each case. Wade raises two issues in this appeal.
 I.
Wade contends that the four separate indictments are multiplicitous in that all four indictments are based on the same set of facts and constitute only one crime. Therefore, he argues, the trial court erred in imposing four separate sentences.
The State's evidence tended to show that the defendant and a co-defendant, Donald Nissen, agreed with two informants, James McMillon and Huey Shira, to obtain, by nefarious means, the contents of a safe located on the premises of the W.J. Word Lumber Company in Scottsboro, Alabama. The defendant was, according to the informants, the "promoter" of this scheme, having allegedly been told that this safe contained approximately one million dollars in cash and jewelry. Apparently, there were several meetings of various combinations of the four individuals involved during which the topic of discussion was obtaining the contents of the safe. According to the informant McMillon, several methods of obtaining access to the contents of the safe were discussed. These methods included utilizing a "safe man"; forcing the general manager, Bill Gross, to open the safe, either through physical violence or by holding a gun to his head; or taking Gross' wife and/or grandchildren hostage and thereby forcing Gross to open the safe. It appears that all of these methods were considered viable alternatives and that the conspirators were in agreement to do whatever was necessary to attain their objective of obtaining the contents of the safe.
Section 13A-4-3(a), Ala. Code (1975), provides:
 "A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement."
It is clear that the conduct proscribed by this section is an agreement to commit a crime, coupled with an overt act in furtherance of this agreement.[1] See Commentary to § 13A-4-3 at 90-91. The question in this case thus becomes whether the activity shown by the State's evidence constitutes only one conspiracy or four separate conspiracies.
In addressing a similar question in United States v.McMurray, 680 F.2d 695 (10th Cir. 1981)[2], the Tenth Circuit Court of Appeals stated:
 "It is apparent that the issue as to whether one or more conspiracies existed . . . is to be resolved by an examination of the facts. The problem is a factual one and each case is unique. There are no general legal propositions which will decide all the cases; instead, an examination must be made on a case by case basis starting with the purpose of the conspiracy and how it was carried out. *Page 1257 The agreement obviously is the central element of any conspiracy. The agreement includes the objective of the combination."
680 F.2d at 699 (emphasis added). See also State v. Judy,372 S.E.2d 796, 799 (W.Va. 1988) ("Whether there is one conspiracy, or multiple conspiracies, is a question of fact to be determined under the totality of the circumstances"). "The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." State v. Judy, 372 S.E.2d at 799.
We find that the State's evidence in this case establishes only one agreement. The clear objective of that agreement was to obtain the contents of the Word Lumber Company safe. The fact that the parties, in order to attain this objective, contemplated engaging in conduct that would constitute several offenses does not, under the facts of this case, result in separate conspiracies. As the United States Supreme Court stated in Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99,87 L.Ed. 23 (1942)[3]:
 "[W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.
 "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects'. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, [the federal criminal conspiracy statute]. For such a violation only the single penalty prescribed by the statute can be imposed."
317 U.S. at 53-54, 63 S.Ct. at 101-02 (citations omitted) (emphasis added), quoted in part in State v. Kitt,8 Conn. App. 478, 489, 513 A.2d 731, 737, cert. denied, 202 Conn. 801,518 A.2d 648 (1986). See also State v. Reyes, 19 Conn. App. 179,185, 562 A.2d 27, 30-31 (1989), cert. denied, 213 Conn. 812,568 A.2d 796 (1990) ("Where the evidence establishes only one agreement, there can be only one conspiracy conviction, even though the conspirators planned, as part of the agreement, to engage in conduct violative of more than one criminal statute").
Because there was clearly only one agreement in this case, the objective of that agreement being to obtain the contents of the Word Lumber Company safe, there could be only one conspiracy conviction and only one sentence imposed.Braverman v. United States, 317 U.S. at 53-54,63 S.Ct. at 101-02; State v. Kitt, 8 Conn. App. at 490, 513 A.2d at 737.See U.S. Const. amend. V; Ala. Const. of 1901 art. I, § 9. This cause is therefore remanded to the trial court with instructions to set aside three of the defendant's conspiracy convictions and the corresponding sentences for those convictions.
Generally, "[i]t is within the trial court's discretion which of the [conspiracy] convictions will be vacated. See Ball v.United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673,84 L.Ed.2d 740 (1985)." Pardue v. State, 571 So.2d 320, 330
(Ala.Cr.App. 1989) (emphasis omitted), reversed on other grounds, 571 So.2d 333 (Ala. 1990). However, *Page 1258 
we observe that the conviction under the indictment charging a conspiracy to commit burglary in the first degree, a crime which is statutorily defined to involve a dwelling, Ala. Code §13A-7-5 (1975), was not supported by the State's proof that the conspirators planned to obtain the contents of a safe located on the premises of a business. Although this matter was not raised at trial or on appeal, "[t]his Court will not deliberately invite a petition for post-conviction relief."Johnson v. State, 528 So.2d 1167, 1168 (Ala.Cr.App. 1987). We therefore instruct the trial court to set aside the defendant's conviction for conspiring to commit burglary in the first degree (CC-88-2140) as one of the three convictions to be set aside. The court shall then resentence the defendant on the remaining conspiracy conviction.
 II.
Wade argues that the prosecutor improperly elicited testimony concerning a prior unrelated offense.
Prior to trial, Wade filed a motion in limine requesting, in part, that "there should be no mention of any similar crimes committed by defendant unless and until the State has made a showing outside the presence of the jury that said crimes are relevant under the rules of evidence and the law of the State of Alabama." This portion of the motion was granted after the jury had been selected but before any testimony had been taken.
At trial, informant McMillon testified that during a trip to Scottsboro, there was a conversation between himself, informant Shira, and co-defendant Nissen in which they "discussed the different ways of robbing Word Building Supply . . . the ways to get in and out of the town without getting caught . . . [and] the people involved in the — this situation." On direct examination, the prosecutor asked McMillon, "What was the discussion concerning Mr. Word?" McMillon responded:
 "Mr. Nissen had told Mr. Shira and myself that Mr. Wade was the man that came up with the business and that he was going to be the promoter, and that he had asked him to get a safe man so that it wouldn't be done in the manner that Mr. Nissen and Mr. Wade had done it in the past."
(Emphasis added.)
Defense counsel immediately objected, and, outside the presence of the jury, requested a mistrial, arguing that the prosecution had violated the granting of his motion in limine. However, the trial judge found that there had been no violation of the motion. From the record:
 "THE COURT: All right, sir. Having had the testimony read back to me, I do not see that that is separable from this trial, the relationship between Mr. Wade and Mr. Nissen. This Court could go very far to protect the constitutional rights of this defendant. But the fact that Mr. Wade and Mr. Nissen, his co-conspirator, know each other because of alleged criminal activities they've done together is hard to separate from the conspiracy in this case.
 "Did you have something you wanted to say Mr. Vickers?
 "MR. VICKERS [prosecutor]: Yes, Your Honor. The discussion is clearly part of the conspiracy. Part of the planning of this crime was not to use the same M.O. that these two defendants have used in the past, so it's clearly a part of planning this crime and how to go about planning it, so it's clearly within the conspiracy.
 "MR. TEAGUE [defense counsel]: Your Honor, they have loosely talked about an M.O. of this defendant. I'd like to refer the Court to a couple of cases. They have to make a showing that he ever has had an M.O. that fits this. I submit they don't have that.
 "THE COURT: This is not a signature crime issue. This is an issue within the conspiracy. All of the conversations and planning between the alleged conspirators, Mr. Wade, Mr. Nissen, Mr. Shira, Mr. McMillon, or whoever is alleged to be in the conspiracy, you can't separate all those matters out. I will admonish the witness not to refer to any convictions that Mr. Wade may or may not have had *Page 1259 
or to any offenses outside of this conspiracy. . ..
". . . .
 ". . . Don't blurt out that you know any information, if you do, about Mr. Wade or any prior crimes he may have committed or not committed. . . .
". . . .
 "I'm going to overrule his objection. The statement you made before we sent the jury out — Mr. Teague, I'm going to overrule your objection. It's not in violation of my motion in limine. And it is part of the alleged planning and operation of this conspiracy. I will also deny your motion for a mistrial."
The general rule is that "[w]here proof of a conspiracy exists, any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in the furtherance of a plan or design, is admissible against the accused." C. Gamble, McElroy's Alabama Evidence § 195.03(1) (3d ed. 1977).
Where there is proof of a conspiracy, "everything done and said in furtherance of the common design by either of the parties to the conspiracy is competent evidence against the other and to be considered by the jury in making up their verdict." Burk v. State, 22 Ala. App. 107, 108, 114 So. 71, cert. denied, 216 Ala. 655, 114 So. 72 (1927). "[W]here a conspiracy is established, any act or declaration of a conspirator made or done in furtherance of the common design is admissible in evidence against a co-conspirator, although not made or done in the presence of such co-conspirator." West v.State, 168 Ala. 1, 4, 53 So. 277, 278 (1910).
 "[A]ny act or declaration of a conspirator is admissible where it apparently recognizes the existence of the conspiracy and reasonably indicates preparation to commit the crime, or to preserve its fruits; where it illustrates the purpose and animus of the parties; or, generally, where it has probative value.
 "It is not necessary that the special act or preparation sought to be shown should be one which was discussed or agreed on by the conspirators. It is also not necessary that the acts or declarations sought to be shown should directly tend to prove accused's guilt of the crime for which he is on trial; they are admissible if they clearly tend to prove the conspiracy and the motive for the crime and to corroborate testimony offered by the prosecution to prove his guilt."
23 C.J.S. Criminal Law § 988 (1989) (footnotes omitted).
Evidence of offenses not charged in the indictment "is not admissible if the only probative function of such evidence is to show [the defendant's] bad character, inclination or propensity to commit the type of crime for which he is being tried." McElroy's at § 69.01.
 "The foregoing exclusionary rule does not work to exclude evidence of all prior crimes, only such as are offered to show the defendant's bad character. If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than as tending to prove guilt via bad character, then proof of such other act is admissible."
McElroy's at § 69.01. Here, McMillon's testimony that Wade had asked Nissen to get a "safe man so that it wouldn't be done in the manner that Mr. Nissen and Mr. Wade had done it in the past" was not offered merely to prove Wade's bad character or propensity to commit a certain type of crime, but was offered to prove the planning that went into the conspiracy and established why a certain additional member of the conspiracy was necessary.
It is our opinion that this statement was made to reassure and bolster the co-conspirator's belief in the success of the conspiracy and in explanation of the requirement for an additional participant in the conspiracy.
 "While it is true that a casual conversation between co-conspirators does not meet the 'in furtherance [of the conspiracy] requirement,' [of Federal Rule of Evidence 801(d)(2)(E)] United States v. Gibbs, 739 F.2d 838, 845 (3d Cir. 1984), *Page 1260 cert. denied, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), 'statements between co-conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met.' United States v. Ammar, 714 F.2d 238, 252 (3d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983)."
United States v. Traitz, 871 F.2d 368, 399 (3d Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). The "furtherance of the conspiracy" requirement for admissibility "is afforded a broad construction." United States v. Bentley,706 F.2d 1498, 1506 (8th Cir. 1983), cert. denied,467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). See generally, 4 J. Weinstein M. Berger, Weinstein's Evidence 801-300 to 801-329 (1990).
This cause is remanded for further proceedings, as instructed in Part I above.
 REMANDED WITH INSTRUCTIONS TO VACATE THREE CONVICTIONS, INCLUDING THE CONVICTION IN CC-88-2140, AND TO RESENTENCE THE DEFENDANT ON THE REMAINING CONVICTION.
All Judges concur.
[1] The sufficiency of the evidence is not challenged in this appeal. We note, however, that there was evidence that an overt act was performed in furtherance of the agreement. Informant Shira testified that he and informant McMillon traveled to Scottsboro with co-defendant Donald Nissen in order "to look over" the Word Lumber Company building so as "to see how to rob it the best way." Informant McMillon also testified regarding this trip to Scottsboro.
[2] McMurray involved four separate indictments charging various defendants with conspiring to defraud the United States Government by submitting false records to the Small Business Administration. Three "hub defendants" were named in all four indictments. In a trial on one of the indictments, two of the hub defendants were convicted and the third was acquitted. In a subsequent trial on another indictment, all three hub defendants asserted the defense of double jeopardy, maintaining that there was but one conspiracy. 680 F.2d at 697.
[3] The defendants in Braverman were indicted "on seven counts, each charging a conspiracy to violate a separate and distinct internal revenue law of the United States." 317 U.S. at 50,63 S.Ct. at 100 (footnote omitted). A jury found them " 'guilty as charged.' " Id.