## STATE OF CONNECTICUT *v.* ARTHULY S. SHAW
## (8036)

DUPONT, C. J., DALY and LANDAU, Js.

Argued December 11, 1990—decision released April 23, 1991

*John F. Kavanewsky, Jr.,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of four counts of conspiracy to commit forgery in the second degree in violation of General Statutes §§ 53a-48 and 53a-139 (a) (3). He was tried with a codefendant, Romane Moore, who was found guilty of four counts of forgery in the second degree, in violation of General Statutes § 53a-139 (a) (2). The charges against the codefendants arose out of the same factual circumstances, although Moore was not charged with conspiracy.[1]

This case involves a scheme to procure, for a profit, forged Connecticut drivers' licenses. The jury could reasonably have found certain facts. On January 19, 1983, the defendant accompanied Anthony Carswell to the department of motor vehicles in Bridgeport. The defendant obtained an application for a driver's license. Meanwhile, the codefendant, who was then employed as a clerk-typist at the department and was the defendant's live-in girl friend, retrieved from a computer the name, address and other relevant information of a person who had not renewed his license. The codefend-

[1] This case does not present the same issue that was resolved in *State* v. *Robinson,* 213 Conn. 243, 567 A.2d 1173 (1989). The *Robinson* court held that the state is barred, as a matter of law, from bringing conspiracy charges against a person after the acquittal of another or other alleged conspirators. Id., 253. In this case, however, of all the conspirators, only the defendant was tried for conspiracy. Conspirators need not all be charged in order to sustain a conviction of one of them for conspiracy. *Ng Pui Yu* v. *United States,* 352 F.2d 626, 633 (9th Cir. 1965). Moreover, a conviction of a single defendant of a conspiracy charge will be upheld if the charge of conspiracy against at least one other conspirator was dismissed other than on the merits because such a dismissal does not determine the guilt or innocence of that other conspirator, or determine whether a conspiracy existed. See *United States* v. *Sachs,* 801 F.2d 839, 845 (6th Cir. 1986); *United States* v. *Sangmeister,* 685 F.2d 1124, 1126–27 (9th Cir. 1982); annot., 19 A.L.R.4th 192. Here, the fact that none of the possible conspirators was tried for conspiracy would not bar the conspiracy charges from being brought against the defendant or void his convictions of conspiracy.

ant then gave this information to the defendant and Carswell. Carswell paid the codefendant $250, and, using the information provided by her, he filled out the application for a driver's license. Robin Hudson, another employee, vouched for the identification of Carswell as the person whose name had been retrieved from the computer by the codefendant. At the time, it was an accepted practice at the Bridgeport office to allow employees to identify license applicants for the purpose of verifying the applicant's identity. Carswell was then photographed, and his application was processed. As a result, Carswell received a license issued in another's name with Carswell's picture on it.

Substantially the same procedure was repeated on June 16, 1983. The defendant drove Carswell to the department of motor vehicles in Bridgeport. After Carswell had obtained an application, the codefendant supplied him with a name and the other necessary information. Carswell again filled out the application with the information provided by the codefendant and then either the codefendant or Hudson identified Carswell as that person. Carswell paid the codefendant or the defendant $250 for this license with Carswell's picture on it but with another's name.

After obtaining this license, Carswell left the building and returned to the defendant's car. From the defendant's car, he observed the defendant and Robert Carter conversing in Carter's car in the parking lot. Carswell followed the defendant and Carter into the motor vehicle office. He saw the codefendant hand Carter a piece of paper with a name and address on it and then watched Carter fill out an application for a driver's license. After an unidentified employee vouched for Carter's identity, he was photographed and his application for a driver's license was processed.

Carswell, after observing Carter obtain a license, then obtained a second license in a manner similar to that used earlier that day. He again paid either the codefendant or the defendant $250 for this second license bearing his picture but another's name. Carter was later arrested and found to possess a license, with his picture on it in the name of another person, issued in the Bridgeport office on June 16, 1983.

On appeal, the defendant has raised two issues. First, he challenges additional instructions given to the jury midway through its deliberations. Second, the defendant claims that the multiple convictions of conspiracy arising out of the events that occurred on June 16, 1983, were duplicative.

The defendant argues that his due process rights under both the federal and the state constitutions[2] were violated when the trial court reinstructed the jury, midway through its deliberations, that it could find the defendant guilty of conspiracy if he conspired with the codefendant or, in the alternative, with "other parties." Specifically, the defendant claims that the court's reinstruction invited the jury to speculate and to render a verdict that was not based on any evidence in the case. The defendant contends that the only evidence of conspiracy related to his codefendant and that there was no evidence from which a jury could find, beyond a reasonable doubt, that a conspiracy existed with others. He further asserts that this instruction completely failed to recite the elements of conspiracy as applied to the participation and the intent of the "other parties."

The state asserts that the defendant's claim is not reviewable because he failed to preserve his claim by

---

[2] We consider only his federal claim because the defendant has not set forth a separate argument supporting his state due process claim. *State v. Ortiz*, 217 Conn. 648, 665 n.13, 588 A.2d 127 (1991).

taking exception to the court's additional instructions. In the alternative, the state urges that if we review this claim, the charge, when considered in its entirety, properly guided the jury in reaching a verdict. The state also argues that there was evidence from which the jury could conclude that the defendant conspired with others.

Although we agree with the state that the defendant did not properly preserve his claim, we, nonetheless, will review it because "the defendant claims that the effect of the objectionable clause was to invite a jury verdict predicated upon speculation and conjecture thus resulting in a fundamental due process violation." *State* v. *Williams,* 199 Conn. 30, 41, 505 A.2d 699 (1986); see *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). *State* v. *Golding,* supra, establishes that a defendant cannot prevail on an unpreserved constitutional claim unless all of four conditions are met, any one of which may be considered first. The defendant here can prevail on his unpreserved constitutional claim if a fundamental constitutional right clearly exists and he has been clearly deprived of a fair trial. Id., 240.

In its initial charge to the jury, the court set forth properly the elements of conspiracy and adequately explained how those elements would apply to a conspiracy between the defendant and the codefendant. Shortly thereafter, the court, in response to a jury question that sought a definition of conspiracy, reinstructed the jurors on the elements of conspiracy and again stated that the agreement, if any, was between the defendant and the codefendant.

Immediately after the court had given the supplemental instruction, the codefendant objected, and argued that the information charging the defendant did not specifically charge conspiracy with the codefendant but rather charged conspiracy "with one or more persons."

The defendant did not, however, object to the supplemental instruction. The court then further instructed the jury, with the agreement of all of the parties, including the defendant. This further instruction was as follows: "Ladies and gentlemen of the jury, it's come to my attention from counsel that in my charge on conspiracy I said that conspiracy—Mr. Shaw is charged with four counts of conspiracy and I said the conspiracy was between Mr. Shaw and Miss Moore. The conspiracy, if you find it, can be between Mr. Shaw and other parties, if you find it. It's not restricted solely to Miss Moore; okay?"

It is well established that the trial court should not submit to the jury any issue that is foreign to the facts in evidence or for which no evidence was offered. *State* v. *Rodgers,* 198 Conn. 53, 56, 502 A.2d 360 (1985); *State* v. *Cofone,* 164 Conn. 162, 168, 319 A.2d 381 (1972). In the present case, however, there was evidence of a conspiracy with persons other than the codefendant from which the jury could conclude "beyond a reasonable doubt that [the defendant] and another person agreed to engage in conduct constituting a crime."[3] *State* v. *Grullon,* 212 Conn. 195, 203, 562 A.2d 481 (1989). The jury could have found that persons other than the codefendant, "with culpable intent, agreed with the defendant to violate the law . . . ." Id.

The defendant also asserts that the court's instruction completely failed to recite the elements of conspiracy as applied to the participation of persons other than the codefendant. The defendant does not claim, nor could he, that the elements of conspiracy were not carefully explicated by the court, as applied to the codefendant.

[3] General Statutes § 53a-48 (a) provides that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

The court stated that the jury must find, beyond a reasonable doubt, an agreement between the defendant and the codefendant to engage in conduct constituting a crime that was entered into with criminal intent to do an unlawful act either as a means or an end and that was followed by an overt act by either one of them to effect the object of their agreement. The jury could have rationally applied the elements of conspiracy, as defined correctly by the court, to others as well as to the codefendant. When the court refers to "other parties," that phrase as used in the context of the entire charge can include only a finite number of persons. The words, contrary to the contention of the defendant, cannot logically refer to an infinite number of unnamed persons not involved in this trial.

The additional instruction must be viewed in the context of the entire charge, and we must determine whether the whole charge sufficiently guided the jury to a proper verdict. Id., 204; *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). In cases involving a constitutional question, as this one does, the standard is whether " ' "it is reasonably possible that the jury [was] misled." ' " *State* v. *Grullon,* supra; *State* v. *Wilson,* 17 Conn. App. 104, 106, 550 A.2d 643, cert. denied, 210 Conn. 803, 553 A.2d 616 (1988). Viewing the charge as a whole, we conclude that it is not reasonably possible that the trial court misled the jury. In sum, the court's charge to the jury fulfilled its mandate to " 'be accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict.' " *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980); *Berniere* v. *Kripps,* 157 Conn. 356, 358, 254 A.2d 496 (1969). Consequently, no fundamental due process right of the defendant was violated.

We conclude that the instruction regarding "other parties" did not deprive the defendant of a fundamental constitutional right, and that he was not denied a fair trial.

The defendant next argues that his multiple convictions of conspiracy and sentences arising out of the event that occurred on June 16, 1983, were duplicative and violated his federal constitutional double jeopardy protection. He contends that the trial court should have set aside two of these three allegedly duplicative counts of conspiracy pertaining to that day because multiple punishments were imposed for a single offense, namely, one conspiracy allegedly occurring on June 16, 1983. The defendant was charged with three conspiracies on that date, involving three forged drivers' licenses obtained for two different individuals. The state concedes that only one conspiracy existed concerning the two licenses obtained by Carswell on June 16, 1983, but maintains that another separate conspiracy involving Carter also occurred. Thus, the state claims that the defendant was properly charged and convicted of two counts of conspiracy relating to that day because the jury could have reasonably found that the evidence supported a conspiracy between the defendant, the codefendant and Carswell, as well as a separate and distinct conspiracy between the defendant, the codefendant and Carter.

"Although the defendant did not raise this claim in the trial court; see Practice Book § 4185; we will address his claim because it implicates plain error by the trial court. See *State* v. *Kitt,* 8 Conn. App. 478, 489, 513 A.2d 731 (1986), cert. denied, 202 Conn. 801, 518 A.2d 648 (1987)." *State* v. *Reyes,* 19 Conn. App. 179, 185, 562 A.2d 27 (1989).

As the defendant correctly argues, the double jeopardy clause of the fifth amendment protects against

multiple punishments for the same offense. *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986). In the context of a single trial, a double jeopardy analysis is a twofold process. It must be determined whether the charges arose out of the same act or transaction and, if so, whether the charged crimes are the same offense. If both conditions are met, multiple punishments are forbidden. Id.

A review of the record reveals evidence supporting two separate conspiracies by the defendant and others on June 16, 1983, to procure, for a profit, forged Connecticut drivers' licenses. Each of the two agreements had its own separate and distinct illegal end and had different participating confederates. See *Blumenthal* v. *United States,* 332 U.S. 539, 558, 68 S. Ct. 248, 92 L. Ed. 154 (1947); *State* v. *Kitt,* supra, 490; cf. *Braverman* v. *United States,* 317 U.S. 49, 54, 63 S. Ct. 99, 87 L. Ed. 23 (1942); *State* v. *Reyes,* supra; *State* v. *Stellato,* 10 Conn. App. 447, 523 A.2d 1345 (1987).

Having determined that the evidence proved two agreements between the defendant and others on June 16, 1983, two judgments of conviction and the two punishments imposed must be upheld, but one judgment of conviction must be reversed. The language of the information for the second, third and fourth counts is identical, however, and it is, therefore, impossible to distinguish among them.

The judgment is reversed as to the convictions on the second, third and fourth counts and the case is remanded with direction to render judgment of guilty on only two of those counts. The judgment is affirmed as to the conviction on the first count.

In this opinion the other judges concurred.