The Court of Criminal Appeals affirmed, in an unpublished memorandum, the convictions of Ibrahim Muhammed Jallad on six counts of conspiracy to commit third-degree burglary in violation of § 13A-7-7, Ala. Code 1975, and four counts of conspiracy to commit first-degree theft of property in violation of § 13A-8-3, Ala. Code 1975. Jallad v.State (No. CR-05-0286), 978 So.2d 77 (Ala.Crim.App. 2006) (table). We granted certiorari review to consider a single issue: whether Jallad could be convicted of both conspiracy to commit third-degree burglary and conspiracy to commit first-degree theft with regard to the same property taken from the same business. We reverse and remand.
Jallad operated a computer store in Montgomery. Brian Cleare, a self-described "experienced burglar and theft artist," testified that Jallad and he had a business relationship and that he would acquire and sell to Jallad computers of the types and in the quantities specified by Jallad. Cleare would burglarize businesses to obtain the computers and Jallad, knowing that the computers had been stolen, would buy them from Cleare.
In furtherance of their relationship, Cleare stole computers from Hamilton, Sexton Berry; Alfa Insurance Company; Eastside Realty; and Barge, Waggoner, Sumner and cannon, Inc. With regard to the taking of computers from each of these businesses, Jallad was convicted of *Page 947 
both conspiracy to commit third-degree burglary and conspiracy to commit first-degree theft of property ("the companion conspiracies"). Jallad argues, in pertinent part, that he may not be convicted of both companion conspiracies as to each business, because, he says, they arise from "just one agreement [and] one event." Jallad's brief, at 18. Although our grant of certiorari review was specifically limited to the consideration of this argument, the State has not responded to it. We agree with Jallad.
In Wade v. State, 581 So.2d 1255 (Ala.Crim.App. 1991), the defendant had been convicted of conspiracy to commit first-degree burglary, conspiracy to commit first-degree robbery, conspiracy to commit first-degree kidnapping, and conspiracy to commit first-degree extortion. Concluding that there had been only one agreement, the Court of Criminal Appeals remanded the case to the trial court with instructions to set aside three of Wade's conspiracy convictions.
 "Wade contends that the four separate indictments are multiplicitous in that all four indictments are based on the same set of facts and constitute only one crime. Therefore, he argues, the trial court erred in imposing four separate sentences.
 "The State's evidence tended to show that the defendant and a co-defendant, Donald Nissen, agreed with two informants, James McMillon and Huey Shira, to obtain, by nefarious means, the contents of a safe located on the premises of the W.J. Word Lumber Company in Scottsboro, Alabama. The defendant was, according to the informants, the `promoter' of this scheme, having allegedly been told that this safe contained approximately one million dollars in cash and jewelry. Apparently, there were several meetings of various combinations of the four individuals involved during which the topic of discussion was obtaining the contents of the safe. According to the informant McMillon, several methods of obtaining access to the contents of the safe were discussed. These methods included utilizing a `safe man'; forcing the general manager, Bill Gross, to open the safe, either through physical violence or by holding a gun to his head; or taking Gross' wife and/or grandchildren hostage and thereby forcing Gross to open the safe. It appears that all of these methods were considered viable alternatives and that the conspirators were in agreement to do whatever was necessary to attain their objective of obtaining the contents of the safe.
"Section 13A-4-3(a), Ala. Code (1975), provides:
 "`A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement.'
"It is clear that the conduct proscribed by this section is an agreement to commit a crime, coupled with an overt act in furtherance of this agreement. See Commentary to § 13A-4-3 AT 90-91. The question in this case thus becomes whether the activity shown by the State's evidence constitutes only one conspiracy or four separate conspiracies.
"In addressing a similar question in United States v.McMurray, 680 F.2d 695 (10th Cir. 1981), the Tenth Circuit Court of Appeals stated:
 "`It is apparent that the issue as to whether one or more conspiracies existed . . . is to be resolved by an examination of the facts. The problem is a factual one and each case is *Page 948 
unique. There are no general legal propositions which will decide all the cases; instead, an examination must be made on a case by case basis starting with the purpose of the conspiracy and how it was carried out. The agreement obviously is the central element of any conspiracy. The agreement includes the objective of the combination.'
"680 F.2d at 699 (emphasis added). See also State v.Judy, 372 S.E.2d 796, 799 (W.Va. 1988) (`Whether there is one conspiracy, or multiple conspiracies, is a question of fact to be determined under the totality of the circumstances'). `The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object.' State v. Judy,372 S.E.2d at 799.
"We find that the State's evidence in this case establishes only one agreement. The clear objective of that agreement was to obtain the contents of the Word Lumber Company safe. The fact that the parties, in order to attain this objective, contemplated engaging in conduct that would constitute several offenses does not, under the facts of this case, result in separate conspiracies. As the United States Supreme Court stated in Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942):
 "`[W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.
 "`The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for "The conspiracy is the crime, and that is one, however diverse its objects." A conspiracy is not the commission of the crime which it contemplates, and neither violates nor "arises under" the statute whose violation is its object. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, [the federal criminal conspiracy statute]. For such a violation only the single penalty prescribed by the statute can be imposed.'
"317 U.S. AT 53-54, 63 S.Ct. AT 101-02 (citations omitted) (emphasis added), quoted in part in State v. Kitt,8 Conn. App. 478, 489, 513 A.2d 731, 737, cert. denied,202 Conn. 801, 518 A.2d 648 (1986). See also State v. Reyes,19 Conn.App. 179, 185, 562 A.2d 27, 30-31 (1989), cert, denied,213 Conn. 812, 568 A.2d 796 (1990) (`Where the evidence establishes only one agreement, there can be only one conspiracy conviction, even though the conspirators planned, as part of the agreement, to engage in conduct violative of more than one criminal statute').
"because there was clearly only one agreement in this case, the objective of that agreement being to obtain the contents of the Word Lumber Company safe, there could be only one conspiracy *Page 949 
 conviction and only one sentence imposed. Braverman v. United States, 317 U.S. at 53-54, 63 S.Ct. AT 101-02; State v. Kitt, 8 Conn.App. AT 490, 513 A.2d AT 737. See
U.S. Const. amend. V; Ala. Const., of 1901 art. 1, § 9. This cause is therefore remanded to the trial court with instructions to set aside three of the defendant's conspiracy convictions and the corresponding sentences for those convictions."
Wade, 581 So.2d AT 1256-57 (footnotes omitted).
The State concedes that Wade was decided correctly. "because there was only one objective of the conspiracy — to steal from a single business — the Court of Criminal Appeals correctly ruled that there was only one agreement or conspiracy, even though several courses of conduct were contemplated to obtain the contents of the one safe." State's brief, AT 11-12. Insofar as the companion conspiracies are concerned, this case cannot be distinguished fromWade. Each agreement between Cleare and Jallad had as its sole objective the taking of computers from a single business. Therefore, there could be only one conspiracy conviction and only one sentence imposed as to each business; in other words, for example, Jallad could not be convicted of both conspiracy to commit third-degree burglary and conspiracy to commit first-degree theft of property with regard to the taking of computers from a single business such as Hamilton, Sexton Berry.
We note that the Court of Criminal Appeals, in its unpublished memorandum, did not address the companion-conspiracies issue. However, the issue was raised in the trial court and again on appeal. For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., recuses herself.